VAN BRUNT, P. J., PATTERSON, INGRAHAM and McLAUGHLIN, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellants to abide event.

---

In the Matter of the Estate of HERMAN SCHLESINGER, Deceased.

EMITA W. MAY and AARON WOLFF, JR., as Executors, etc., of LEWIS MAY, Deceased, Appellants; SOLOMON H. SCHLESINGER and EDWARD SCHLESINGER, Respondents.

*Abatement of special proceedings in a Surrogate's Court by the death of a sole party —
Statute of Limitations — laches.*

Section 755 of the Code of Civil Procedure, as amended in 1891, providing that a special proceeding does not abate by any event if the right to the relief sought therein survives, does not apply to the Surrogate's Court, and there is at present no statutory provision which prevents the abatement of a special proceeding in that court upon the death of a sole party thereto, plaintiff or defendant.

Where a proceeding instituted by two executors of a testator, for a final settlement of their accounts, resulted, in 1876, in a decree of the surrogate settling their accounts and revoking the letters of one of them, Lewis May, and although the decree was opened by an order of the General Term in 1882, at the instance

FIRST DEPARTMENT, JANUARY TERM, 1899. [Vol. 36.

of the parties defendant in such proceeding of 1876 so far as to permit them to try the question as to the liability of May for losses sustained by the estate through the defalcation of his co-executor and co-trustee, who had disappeared in 1879, no further action was taken in the proceeding of 1882 by such defendants, they are not entitled, in the year 1897, and within one year after the death of May, to institute proceedings against his personal representatives by petition for a settlement of his accounts as executor and to try his liability for such losses, as such a proceeding is within section 2726 of the Code of Civil Procedure and is barred by the Statute of Limitations (Code Civ. Proc. § 414).

The position of the petitioners in the present proceeding of 1897, having been in the former proceeding that of defendants rather than of moving parties, does not entitle them to claim that the Statute of Limitations has not run because of the provisions of section 405 of the Code of Civil Procedure to the effect that if an action is taken within the time limited therefor, and the judgment therein is reversed on appeal without awarding a new trial, or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for a neglect to prosecute the action or a final judgment upon the merits, the plaintiff may commence a new action for the same cause after the expiration of the time so limited and within one year after such termination, as that section — which, although in terms applying only to an action, is by the subsequent sections 414 and 415 extended to a special proceeding — has reference only to a moving party or plaintiff therein, and does not, when construed in connection with section 412, give any rights to the other parties therein; and the fact that, after the order opening the decree entered in 1882, there rested upon the petitioners the necessity of taking the first step in the proceeding did not constitute them, practically, the plaintiffs therein, since, if they had actually filed their objections after the default had been opened, they would have stood in the same relation to the proceedings as though they had filed them upon the return of the citation.

Nor can the petitioners in such case claim that, under section 412, the time during which the former proceeding was pending should not be reckoned as part of the time limited for the filing of the petition, as that section applies only to a defendant who has interposed a defense or counterclaim therein which might be the subject of a separate action, and this the petitioners had never done.

*Semble*, that if, in the absence of proof of the death of the defaulting executor, the death of May did not abate the proceeding, it did not give the petitioners an absolute right to have May's executors substituted in his place, as that matter rested in the discretion of the court, and that the *laches* of the petitioners in allowing more than fifteen years to elapse after the opening of the decree by which May was discharged required a denial of their application.

APPEAL by Emita W. May and another, as executors, etc., of Lewis May, deceased, from an order or decree of the Surrogate's Court in the county of New York, entered in said Surrogate's Court

on the 16th day of September, 1898, requiring the said Emita W. May and Aaron Wolff, Jr., as executors, etc., of Lewis May, deceased, to file an account of the proceedings of the said Lewis May, as executor of the estate of Herman Schlesinger, deceased, so far only as to permit Solomon H. Schlesinger and Edward Schlesinger to assert and try the question of the liability of the said Lewis May, as executor and trustee, to any extent and to what extent, if any, at the time the decree and accounting of March 10, 1876, were made and entered, for the loss of the assets of the said estate, if any, sustained by his co-executor and co-trustee Epstein prior to the making of said decree, and for which the said Lewis May was then properly accountable and chargeable; also providing that on the trial and examination of such question Emita W. May and Aaron Wolff, Jr., as executors, etc., of Lewis May, deceased, should not be in anywise prejudiced by the form in which said accounts, dated the 10th day of March, 1876, or at any other time, were made or presented by the said Lewis May, or by his co-executor or co-trustee, the said Epstein, or both of them, or by any concession or admission therein expressed or implied, that the properties or assets of the estate, or any part thereof, was then, or had been at any time, in the hands of said Lewis May, separately or jointly with his co-executor or co-trustee Epstein.

*Julius J. Frank*, for the appellants.

*T. B. Chancellor*, for the respondents.

RUMSEY, J.:

Herman Schlesinger died in May, 1869, and in November of that year his will was duly admitted to probate by the surrogate of the county of New York, and letters testamentary thereon were issued to Lewis May and Julius Epstein, who qualified and entered upon the duties of their office. In the year 1876 proceedings were begun by the executors for a final accounting, and on the 10th day of March, 1876, a decree was entered in the Surrogate's Court settling the accounts of the executors as presented by them, and decreeing, among other things, that Lewis May having applied to be discharged as executor and trustee under the will, the letters testa-

FIRST DEPARTMENT, JANUARY TERM, 1899.          [Vol. 36.

mentary granted to him were revoked and he was discharged from his trust. At that time the respondent Solomon Schlesinger was of full age, and Edward Schlesinger became of age on the 7th of July, 1876. In the summer of 1879, Epstein, who had been for three years the sole executor, became insolvent and fled the country. On the 22d day of March, 1880, the two persons who are respondents here applied in the proceeding for a final accounting, that the decree of the surrogate might be opened, to the end that they might file objections to the account, and surcharge it because of certain misappropriations and losses of the estate, which it is claimed began in 1873 and continued through the years 1874 and 1875. An order was made by the surrogate in that proceeding, vacating the decree and giving leave to the two Schlesingers to file objections to it. From that order an appeal was taken to the General Term, and that court modified the order of the surrogate by opening the decree and accounting, only so far as to permit the petitioners to assert and try in the Surrogate's Court the question of the liability of Lewis May as executor and trustee for the losses of the assets of the estate, if any, which had been sustained by the acts of his co-executor and co-trustee, Epstein, prior to the making of the decree. That order contains some limitations as to the effect upon May's rights of the opening of the account, which it is not necessary to consider further in this connection. This order of the General Term was entered on the 6th day of February, 1882. No further proceedings were taken under the order for fifteen and one-half years, and until after the 22d day of July, 1897, when Lewis May died. After that, and on the 9th of December, 1897, objections to the account were filed by the two Schlesingers, and they undertook to enter an order of reference in the original proceeding. That having been done, the petition in this matter was filed, asking for a citation directed to the executors of May requiring them to show cause why they should not render and settle the account of Lewis May, deceased, as executor of the said Herman Schlesinger, deceased, and why that account should not be judicially settled so far as to permit these two petitioners to try the liability of Lewis May as executor and trustee to any extent and to what extent, if any, at the time the decree of March 10, 1876, was made, for the loss of the assets of the estate, if any, sustained by the acts of his co-executor and co-trustee, Epstein, before the mak-

ing of the decree, and for which Lewis May was properly chargeable. Upon the hearing of this petition before the surrogate, the executors of May interposed an answer setting up, among other things, the Statute of Limitations as a reason why the matter should not proceed further. The learned surrogate before whom the proceeding was had held that the Statute of Limitations was not a defense, and entered a decree requiring the executors of Lewis May to file an account of his proceedings as executor of the estate of Herman Schlesinger, to the extent and for the purposes asked for in the citation which had been issued to them, and from that decree this appeal is taken.

It is insisted on the part of the appellants that the former proceeding abated by the death of Lewis May on the 22d of July, 1897; that this proceeding is a new one for an accounting; that it is barred by the Statute of Limitations, and that there is no provision in the Code which saves the proceeding from the running of the statute. In the absence of any statute upon the subject, when a sole party to an action at law died before trial, the action abated and there was no way to revive it. (*Evans* v. *Cleveland*, 72 N. Y. 486.) The right to revive and continue the action in the name of the executor of a deceased party, or against such executor, depends solely upon the statute. (*Matter of Palmer*, 115 N. Y. 493.) Before 1891 there was no statute which prevented the abatement of a special proceeding by the death of a sole party plaintiff or defendant. (*Matter of Palmer, supra.*) In 1891, however, section 755 of the Code treating of that subject was amended by providing that a special proceeding did not abate by any event if the right to the relief sought therein survived or continued (Code Civ. Proc. § 755); but this section does not apply to the Surrogate's Court, and there is now no statutory provision which prevents the abatement of a special proceeding in that court upon the death of a sole party plaintiff or defendant; and, therefore, when on the 22d of July, 1897, Lewis May died, the special proceeding then pending abated. Such seems to have been the understanding of the petitioners in this matter, for they do not ask that the executors of Lewis May shall be substituted in his place as petitioners in the proceeding for an accounting which was begun by him, but for a new citation to be

issued to them requiring them to file an account. This is a very different proceeding from the former one. In the former, Lewis May was the moving party. He had taken steps to file an account and to be discharged as an executor, and the petitioners here, who were parties to that accounting, were the persons proceeded against; while this proceeding is against the executors of Lewis May for the involuntary accounting by them for his doings in the matter of the estate of Schlesinger. They are brought into court unwillingly, and instead of occupying the position of moving parties, as May did, they are practically made defendants in a proceeding begun against them, and asserting against them as executors a right which they claim does not exist. The proceeding is clearly one within section 2726 of the Code of Civil Procedure, to compel a judicial settlement of the account of an executor or administrator, and might have been taken within one year after the letters had been issued to May, or at once after those letters had been revoked, or his powers had ceased, pursuant to the provisions of that section. That is a special proceeding, and the Statute of Limitations applies to it. (Code Civ. Proc. § 414.) Assuming that the right to this proceeding accrued to these petitioners on the 10th day of March, 1876, when the decree was entered revoking the letters testamentary to May, more than twenty-one years elapsed before the presentation of this petition, which is the act fixed by the statute to be deemed the commencement of this proceeding. (Code Civ. Proc. § 2517.) Either the six-year or the ten-year Statute of Limitations runs against the right to continue this proceeding (*Matter of Rogers*, 153 N. Y. 316), but it is unnecessary to consider here which of them applies. Unless, therefore, something has happened to prevent the running of the statute, this proceeding is clearly barred.

But it is claimed by the respondent that the statute has not run because of the provisions of section 405 of the Code of Civil Procedure. That section provides in substance that if an action is begun within the time limited therefor, and a judgment therein is reversed on appeal without awarding a new trial, or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action or a final judgment upon the merits, the plaintiff may commence a new action for the same cause after the expiration of the time so limited

and within one year after such termination. Although this section
applies in terms only to an action, yet the provisions of section 414
and 415 extended it to a special proceeding. The question is, there-
fore, whether these petitioners occupied such a position in the former
proceeding that, within the reading of this statute, they are entitled
to bring another proceeding within a year after the termination of
that one. It will be noticed that this section applies in terms only
to a plaintiff in an action who is, by section 3338, defined as the
party prosecuting a civil action, in contradistinction to the party
prosecuted, who is termed the defendant. According to the reading
of section 415 of the Code of Civil Procedure it is fair to infer that
the person presenting a claim for relief, upon which he begins a
special proceeding, is to be regarded as the plaintiff in that proceed-
ing, and, conversely, of course, those against whom he presents that
claim are to be regarded as the defendants. The original proceed-
ing for an accounting, which was begun in 1876, is alleged to have
been begun by the executors Epstein and May. In the ordinary
course, and before any proceedings could have been taken in that
matter, it was necessary that they should have procured a citation
to be issued against those who were interested in the estate of Her-
man Schlesinger, and served upon them so that they would be par-
ties to the proceeding for an account. It is to be presumed that
that was done, at least as to these two petitioners, because we find
that in 1880 they obtained an order to show cause in that proceeding
why the account should not be opened and they be permitted to file
objections. This they could not have done unless they were parties
to the proceeding, or unless they made themselves parties at that
time as against the executors of Herman Schlesinger, who had taken
steps to file their account. In either case they were not the prose-
cuting parties in that matter, and they did not occupy, as to that,
the position which a plaintiff in an action occupies. The essen-
tial difference between the plaintiff and the defendant in an action
or a proceeding is that the plaintiff is the moving party; he
inaugurates the proceeding; he takes steps to bring the other
parties into court by an adverse proceeding against them, and it is
because he comes into court asserting a claim and asking for relief
against them that he becomes the plaintiff, and they, unwillingly
brought into court upon his complaint, become the defendants.

That was the relative situation of May and these petitioners with regard to the proceeding which was begun by May and Epstein for a final accounting and for his discharge. It is said, however, that although they were nominally the parties proceeded against in that matter, yet they were practically plaintiffs, because after the order of the General Term, there rested upon them the necessity of taking the first step in the proceeding by reason of the permission given to them to file their objections to the account. But that claim ignores the actual condition of affairs. When these persons were brought into that accounting by the service of the citation, or when they came into the accounting by virtue of the order to show cause in the proceeding which was then pending, they came into a proceeding, the originators of which were asking relief against them. If there had been no default upon their part, they would have been entitled, upon the return of the citation, to file objections to the account and to surcharge it. And if they had actually filed their objections after the default had been opened, they would have stood in the same relation to the proceeding as though they had filed them in time. But there can be no doubt that while these objections, had they been interposed before the proceeding abated, would have required them to introduce proof to establish their charges against the executors, they would not have been put in any other situation than any other defendant is put in when he sets up an affirmative defense, or a counterclaim. He does not cease to be a defendant in the action or proceeding, although he interposes an answer which puts upon him the duty of proving a claim against the moving party which shall either diminish the amount to which that party is entitled, or obtain an affirmative judgment against him. The person thus asserting a defense or counterclaim does not change his relative position in the action, nor would he do so in a special proceeding. He remains still in the same situation. He was a defendant when the proceeding was begun, and he remains a defendant until the proceeding is finally ended. Section 405 in terms applies only to a plaintiff, and it was not intended to give any rights to a person who was not a plaintiff in an action, although he might have asserted in that action the right to affirmative relief. This clearly appears from the provisions of section 412, by which it is enacted that where the defendant in an action has interposed an answer in support of which

he would be entitled to rely at the trial upon a defense or counter-claim then existing, the dismissal of the action after the Statute of Limitations has run against his defense or counterclaim does not bar his right to insist upon his affirmative relief in another action. If section 405 had applied to the case of a defendant asserting an affirmative right, it is clear that the provisions of section 412 would have been entirely unnecessary. For these reasons we conceive that the petitioners' time to begin this proceeding for an involuntary accounting was not extended, under the provisions of section 405, to one year after the death of Lewis May.

Nor are they within the provisions of section 412. That section only applies in terms to a defendant who has interposed the defense or counterclaim in an action or special proceeding. The defense or counterclaim referred to is one that might be the subject of a separate action. If the defendant chooses to treat it as such, the Statute of Limitations runs against it as in any other case. Until he has elected not to sue on it by setting it up as a defense in the action against him, it is subject to the bar of the statute. But when he elected to try this claim in an action against him, over which he had not full control, justice required that if that action was determined without giving him an opportunity to establish his claim, he should still be at liberty to sue upon it. But this right depended upon his actually exercising his election to recover his claim in the action pending against him, for until he had done that, he was still at liberty to sue upon it as an independent cause of action, and so long as that option exists, the statute is running against the claim. The right to sue on the claim is not waived until the answer setting it up has been actually interposed. Section 412, therefore, does not apply to a party who has not actually interposed his claim as a defense or counterclaim in the action or proceeding against him. This these petitioners had never done. When Lewis May died on the 22d of July, 1897, the petitioners here, although for fifteen and a half years while he was alive they had the right by order, to interpose these objections and surcharge his account, had not seen fit to exercise it. Lewis May had never been apprised of the claim made against him, but the matter stood entirely upon a permission given by the court to these people to make such a claim if they desired to do so. Until they had interposed that claim against Lewis May,

they were not within the provisions of section 412, and, therefore, they are not now at liberty to say that the time during which the other proceeding was still pending should not be reckoned as a part of the time limited for the filing of their petition. The justice of this interpretation is obvious in this case. The charge against Lewis May was not that he himself had made away with any of the assets of this estate, but he was sought to be made chargeable with the losses sustained through the acts of his co-executor and co-trustee. There is no claim that he had anything to do with these losses, nor is there any reason to believe that he had knowledge of the extent of them or the manner in which they accrued. After this great length of time, during which Epstein has disappeared and May is dead, it would be imposing upon these executors a burden much greater than they ought to bear to compel them to undertake the duty of defending their estate against charges of dishonesty or defalcation of a third party of which they can have no knowledge, and with regard to which it would be extremely difficult for them to obtain any information. For these reasons we are of the opinion that the Statute of Limitations had run against the right of the petitioners to begin this proceeding.

But it appears that the original proceeding was begun by Epstein and May as executors, and for that reason, as there is no proof that Epstein is dead, it may be claimed that the death of May did not wholly abate the proceeding because one of the parties to it was still living, and, therefore, the court should substitute the executors of the one who is dead. Even if that were so, there would be no absolute right on the part of these petitioners that the executors of May should be substituted, but it would rest entirely in the discretion of the court. When an application is made to the court to exercise its discretion, in such cases a great *laches* on the part of the applicant is always regarded as a sufficient answer, and will operate to require the refusal of the order. In this case there has been a delay to press these proceedings from the 6th of February, 1882, until the 9th of December, 1897. This delay is entirely unexplained and it certainly constitutes so great *laches* that, even if the matter is one within the discretion of the court, it should operate to require the denial of the application. (*Pringle* v. *L. I. R. R. Co.*, 157 N. Y. 100; *Matter of Palmer*, 115 id. 493.)

For these reasons we are of the opinion that the decree of the surrogate should be reversed, with costs, and the application of the petitioner should be denied, with costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and INGRAHAM, JJ., concurred.

Decree reversed, with costs, and application of petitioner denied, with costs.