LAURENT VAN DER STEGEN, Doing Business under the Firm Name and Style of THE BELGIAN TRADING COMPANY, Respondent, Appellant, and FREDERICK N. MATTHEWS and Others, Copartners Doing Business under the Firm Name and Style of LOWE, BINGHAM & MATTHEWS, as Curators in Bankruptcy of LAURENT VAN DER STEGEN, Doing Business, etc., Coplaintiffs, Respondents, Appellants, v. NEUSS, HESSLEIN & Co., INC., Appellant, Respondent.

First Department, December 31, 1934.

*Robert H. O'Brien* of counsel [*Richard Jones, III*, and *Oliver A. Pendar* with him on the brief; *Simpson, Thacher & Bartlett*, attorneys], for the plaintiff and coplaintiffs.

*Gustav Lange, Jr.*, for the defendant.

MERRELL, J. This action was brought by a seller against a buyer to recover damages for a breach of contract to sell certain egg products. The original contract was made by the Belgian Trading Company, the seller, and the defendant, a New York corporation, as buyer. The plaintiff Laurent Van der Stegen was doing business at Shanghai, China, under the name of Belgian Trading Company. The contract in question is claimed to have been made on January 30, 1920. Van der Stegen was a Belgian citizen residing in Shanghai, and was at the time of the making of the contract the manager and owner of the business. The defendant was represented at Shanghai by a man by the name of Hough. The contract in question was entered into between Van der Stegen and the defendant through its agent Hough and was for the sale by Van der Stegen to defendant of seventy-five tons of hen albumen at one dollar and twenty-eight cents per pound net c. i. f. New York and one hundred tons of spray yolk powder at fifty-four cents per pound net c. i. f. New York. The evidence clearly disclosed that Hough was the defendant's agent at Shanghai and was the manager of its branch office there. As manager he had general authority to contract for the defendant. But in regard to the contract in question the evidence conclusively established that Hough had specific authority by cables from the defendant in New York to make contracts and the contract in question. The contract which he made for the seventy-five tons of hen albumen and one hundred tons of spray yolk powder was in accordance with the specific instructions which he received by cable from the defendant in New York. An attempt was made on the argument and in the appellant's brief to show that Hough was not the agent of the defendant at Shanghai, and that he was not authorized to enter into the contract in question. The various cables and the letter of confirmation received by the plaintiff from the defendant clearly established the making of the contract in question. After the contract was made and before it was fulfilled the price of the products embraced in the contract rapidly declined and the defendant evidently found it necessary to " welch " on its contract. I think the evidence shows a clear case of " welching."

Several special defenses have been interposed by the defendant to plaintiff's claim. The learned justice before whom the action was tried rendered a brief decision in which he took occasion to say that "the numerous defenses urged by the defendant are ineffective to defeat the plaintiff's right to recover." It seems to me that none of the defenses interposed by defendant require any serious consideration, except the defense of the Statute of Limitations, the defendant insisting that the action was not brought within the time limited for the bringing of an action for breach of contract. The main contention of the defendant upon the appeal was that no contract was made. However, an examination of the cablegrams and correspondence passing between the parties clearly overcomes any such claim. There can be no doubt that the contract was, in fact, made. It is established by the clear and uncontradicted testimony of the defendant's witness, Hough, and by the cablegrams and correspondence passing between the parties. Likewise, it was clearly established that Hough had authority to make the contract in question. Furthermore, the contract was ratified by the defendant by letter written January 31, 1920, and also was confirmed by letter from the Belgian Trading Company to the defendant under date of February 7, 1920, which was received by the defendant in New York on March 15, 1920. The defendant in New York replied to the last-mentioned letter from the plaintiff under date of March 24, 1920, acknowledging receipt of plaintiff's letter of February 7, 1920, which inclosed certain sales notes covering the product in question and stating: " In view of the extremely narrow margin of profit with which we have turned over this business, we find it hard to reconcile ourselves to the fact of having to pay you for the 25 tons of Albumen $1.30 instead of $1.28 as ordered. If we have nevertheless agreed to this increase, it was merely in order not to destroy the chances of this initial business in this important line between us. However, in view of these circumstances, you will readily understand that we are quite unable to augment our limit to $1.29 on the balance of 75 tons of Albumen." This clearly expressed an admission on the part of the defendant as to the seventy-five tons of albumen. From this it appears that the defendant in New York declined to accede to the request of the Belgian Trading Company which had been made to Hough when the contract was closed as shown by Mr. Hough's cable to the defendant in New York on January 30, 1920, to increase the price on the albumen to one dollar and twenty-nine cents per pound. There is no question that while the plaintiff had closed the contract with Hough at one dollar and twenty-eight cents per pound for the albumen, he thought

that this left him too small a profit, and, therefore, asked the defendant voluntarily to increase the price one cent per pound. In the letter of March twenty-fourth the defendant refused such request and states that it is unable to augment its limit to one dollar and twenty-nine cents on the balance of seventy-five tons of albumen. Thus, it appears that the defendant recognized the existence of the contract for the purchase of the seventy-five tons of albumen at one dollar and twenty-eight cents per pound. The evidence clearly shows that the contract was broken by the defendant. Although the defendant had recognized the existence and validity of the contract and had repeatedly ratified the same by communications passing between the plaintiff and the defendant after the contract was made, on January 30, 1920, after the defendant in New York had full knowledge of all the terms of the contract, the defendant suddenly, in the latter part of May, 1920, claimed to have discovered that the contract was not in accordance with the defendant's order, and on May 27, 1920, the defendant cabled the plaintiff from New York as follows: " Your confirmation of numbered 536-2-3-4 [the sales notes] is not in accordance with our purchase, therefore reject the entire transaction." Soon after being advised that the defendant repudiated the contract the plaintiff, on June 20, 1920, brought action against the defendant in United States Court for China at Shanghai to recover the sum of $211,239.49, with interest, as damages for the breach of the contract. After a trial on the merits, a judgment was entered on January 12, 1924, in plaintiff's favor for the full amount, which judgment was reduced to $171,239.49 by a judgment in favor of defendant for $40,000 of the amount, claimed by the defendant on its first counterclaim herein, which amount the plaintiff admitted he owed to the defendant. The defendant appealed to the United States Circuit Court of Appeals, Ninth District, from said judgment. The United States Circuit Court of Appeals reversed the judgment obtained in China upon the sole ground that the defendant was not doing business in Shanghai, and, hence, that the United States Court for China did not have jurisdiction over the defendant. (10 F. [2d] 772.) In thus reversing, the Circuit Court of Appeals did not consider the merits of the cause of action. Subsequently an application for a writ of certiorari was denied by the United States Supreme Court. (271 U. S. 681.) The mandate of the Circuit Court of Appeals reversing the judgment was not entered until June 9, 1926. Thereafter the action in the United States Court for China was dismissed by an order of that court entered on the mandate on July 29, 1926, thereby terminating the prior action. After the reversal of the judgment obtained in China, and

on February 16, 1926, the present action was brought by the service of a summons in the name of the plaintiff upon the defendant in the Supreme Court of New York. The complaint was served on April 1, 1926, demanding judgment for $211,237.49, with interest. On June 21, 1926, the defendant served an answer in the action, which answer was later amended. It also appears that while the former action was pending in the United States Court for China plaintiff purported to make an assignment to the Asia Banking Corporation of any money which he might recover of the defendant on the judgment in the former action. This assignment bears date May 24, 1923. The only effect of such assignment, if valid, was to transfer to the Asia Banking Corporation whatever interest the plaintiff had in the judgment in the former action. That judgment having been vacated, nothing passed to the Asia Banking Corporation. On September 4, 1923, plaintiff was adjudicated a bankrupt by the Belgian Consular Court in Shanghai and a curator in bankruptcy was appointed. This curator acted until April, 1924, at which time he resigned and the Belgian Consular Court appointed the coplaintiffs in this action as curators in bankruptcy of the plaintiff, by decree dated April 23, 1924. On January 25, 1926, the Asia Banking Corporation agreed to forbear to sue on the aforesaid assignment of May 24, 1923, and the coplaintiffs, as curators, agreed to take all necessary action to collect all sums of money which may become due and payable to plaintiff from defendant by reason of the judgment in the former action or cause of action sued upon therein, and they agreed to pay to Asia Banking Corporation a sum equal to seventy per cent of the net proceeds, if any, so collected and received by the curators, the remaining thirty per cent of such proceeds, if any, to be paid into the bankrupt estate for the benefit of the other creditors. The Belgian Consular Court authorized the coplaintiffs, as curators in bankruptcy, to sue the defendant herein by decree of September 27, 1926.

It seems to us there are several grounds upon which the court was justified in holding that the Statute of Limitations had not run against the plaintiff's present cause of action. In the first place, the court was undoubtedly governed by two decisions of this court in the present action, in each of which the question of the Statute of Limitations was presented and held adversely to the defendant's contention. The first application was made at Special Term to substitute the curators in bankruptcy in the place and stead of the plaintiff Van der Stegen. Upon the application to substitute the curators as parties plaintiff for the original plaintiff, a claim was made by the defendant, among others, that the Statute of Limitations had run against the plaintiff's claim. The court at

Special Term granted the application, but, upon appeal to this court, the same was modified to the extent of allowing the curators to be joined with the plaintiff as parties plaintiff. (226 App. Div. 872.) A supplemental complaint was served and within twenty days thereafter the defendant moved for judgment dismissing the complaint and supplemental complaint. Defendant's motion in this respect was made upon the complaint, bill of particulars, supplemental complaint, *and affidavits* under rule 107 of the Rules of Civil Practice. On this motion the defendant urged the defense that the plaintiff and coplaintiffs had no legal capacity to sue, were not the real parties in interest, *the defense of the Statute of Limitations,* the Statute of Frauds, and *res adjudicata.* The defendant's motion to dismiss was denied in all respects by the Special Term. An appeal was then taken to this court from the order of the Special Term, and on March 7, 1933, this court, by an order entered, unanimously affirmed the order of the Special Term which denied the defendant's motion in all respects. (238 App. Div. 829.) No opinion was written, either at Special Term or in this court. The defendant moved to reargue or for leave to appeal to the Court of Appeals, and its motion was denied by order of this court entered April 7, 1933. It seems to me that the law of this case was settled by the determination of this court on the two appeals mentioned. While, perhaps, the action of this court did not amount to *res adjudicata,* certainly it fixed the law of the case, and this court is bound thereby, and the justice below undoubtedly felt himself bound by the two decisions of this court holding, in effect, that the Statute of Limitations had not run. Unless we are to stultify ourselves, we cannot rule differently now on this appeal.

Furthermore, aside from the fact that this court has already held adversely to the contention of the defendant in the two instances mentioned, that the action is not barred by the Statute of Limitations, we think, unquestionably, under the provisions of the Civil Practice Act, the action is not barred by the statute. There is no different cause of action alleged in the complaint than that alleged in the action brought in China. The same cause of action continues, and is set forth in the supplemental complaint in the present action. Section 23 of the Civil Practice Act, under the title, " Limitations of Time," provides as follows:

" § 23. Effect of reversal of judgment or termination of action. If an action is commenced within the time limited therefor, and a judgment therein is reversed on appeal without awarding a new trial, or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect

to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if he dies and the cause of action survives, his representative, may commence a new action for the same cause after the expiration of the time so limited and within one year after such a reversal or termination."

The above-quoted provision, we think, is applicable to the situation here presented. Thus, when the action was dismissed, the plaintiff was still the owner of the claim and before the appointment of the curators in bankruptcy the plaintiff became a trustee of an express trust, and we believe was privileged to bring a new action in the State court of New York. Section 83 of the Civil Practice Act, under the title, " Abatement and Continuance," provides as follows:

" § 83. Proceedings upon transfer of interest, or devolution of liability. In case of a transfer of interest, or devolution of liability, the action may be continued by or against the original party, unless the court directs the person to whom the interest is transferred or upon whom the liability is devolved to be substituted in the action or joined with the original party as the case requires."

This court and many other courts have held in case of substitution, the original plaintiff holds the right as a trustee for the beneficiaries by operation of law. A trustee of an express trust can sue in his own name. The title to the causes of action set forth in the complaint and the right to sue thereon devolved upon the coplaintiffs as curators in bankruptcy of the plaintiff by operation of law. This is alleged in the supplemental complaint *and admitted in the answer thereto.* Paragraph II of the supplemental complaint alleges that the plaintiff was duly adjudicated a bankrupt by the Belgian Consular Tribunal in Shanghai. Paragraph III alleges that the Belgian Consular Tribunal was, at the time of such adjudication and still is, a court of competent jurisdiction for the purpose of such adjudication in bankruptcy. Paragraph IV alleges that the Belgian Consular Tribunal adjudicated the plaintiff a bankrupt and appointed a curator in bankruptcy and adjudged that all of the bankrupt's property should be forthwith sealed and delivered to said curator. Paragraph V alleges that by reason of such adjudication under the laws of the Kingdom of Belgium, title to all of said plaintiff's property and choses in action, including claims and demands against the defendant, became vested in said curator. The supplemental complaint then alleges the substitution of new curators, the coplaintiffs herein, and that such appointment of the coplaintiffs as curators is still in full force and effect, and that the claims in question were vested in said coplaintiffs as curators. *These*

*allegations are admitted in the answer of the defendant,* the defendant thus admitting the jurisdiction of the Belgian Consular Tribunal to appoint the coplaintiffs as curators. Therefore, beyond any question, the title of the coplaintiffs to the causes of action alleged in the complaint devolved upon them by operation of law as curators in bankruptcy of plaintiff. The title to the causes of action set forth in the complaint remained at all times in the plaintiff and devolved upon the coplaintiffs as his curators in bankruptcy by operation of law. The addition of the curators as coplaintiffs injected no new cause of action into the action originally brought, and, except in form, did not bring in any new parties. The Statute of Limitations did not run after the commencement of the present action by the plaintiff.

The courts of this State have been extremely liberal in retaining a cause of action which once existed, notwithstanding the limitation statutes. Recent decisions of our highest courts disclose that in the interest of substantial justice the courts are extremely lenient in permitting the service of amended or supplemental pleadings bringing in parties, or even amending causes of action, where the Statute of Limitations has run. The leading case is that of *N. Y. C. & H. R. R. R. Co.* v. *Kinney* (260 U. S. 340). That case was cited by the Court of Appeals, with approval, in *Harriss* v. *Tams* (258 N. Y. 229, 242). The court, in its opinion in the *Kinney* case, said (at p. 346): " Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the Statute of Limitations do not exist, and we are of opinion that a liberal rule should be applied."

In *Rudkowsky* v. *Equitable Life Assurance Society* (145 Misc. 765; affd., 238 App. Div. 704) the Trial Term of the Supreme Court, New York county, Mr. Justice FRANKENTHALER presiding, had this to say: " The following question propounded by Judge LEHMAN in *Harriss* v. *Tams* (*supra*, at p. 242), is the question to be determined here: ' The question here is whether the action from its commencement was upon the same obligation or liability, though the cause of action to enforce that obligation or liability has been changed, or a new remedy has been asserted.'

" In answering that question, Judge LEHMAN indicated that the determination to some extent had to be based on considerations of fairness, and that a liberal, rather than a technical, construction was desirable."

There certainly is no reason why the plaintiffs in the present case should not be accorded every consideration within the con-

templation of the court in the authorities cited. The present action is the second action brought by the plaintiff against the defendant for relief. In the first action the plaintiff recovered judgment after a trial on the merits. This judgment was reversed solely on jurisdictional grounds, and, at once, upon such reversal, the present action was brought. The first action was brought within a month from the time that the cause of action accrued, and even before the former action was finally terminated the present action was commenced by plaintiff in February, 1926. As soon as plaintiff's attorneys learned the facts concerning the bankruptcy of Van der Stegen they moved to substitute the curators as parties plaintiff in September, 1926. The plaintiffs have not slept upon their rights but have moved as promptly as possible at all times. The coplaintiffs, though added as additional parties plaintiff, are not new parties to the action. The plaintiff's claim has merely devolved upon the coplaintiffs as the result of the bankruptcy proceedings of the original plaintiff. The addition of the coplaintiffs in this action was in reality only a change in the description of the plaintiff. In *Hulbert Brothers & Co.* v. *Hohman* (22 Misc. 248) the court, per HISCOCK, J. (at p. 249), said: " It seems that at the time this action was commenced the above-named Forster had been appointed receiver of Hulbert Brothers & Company and, therefore, the cause of action was vested in him. Through inadvertence the summons and complaint were entitled in the name of the company as plaintiff, and this application is now made to change the name of the plaintiff accordingly.

" I think it is within the power of the court to grant the application and that the amendment should be allowed. Code, § 723; *Heckemann* v. *Young*, 18 Abb. N. C. 196; *Kaplan* v. *N. Y. Biscuit Co.*, 5 App. Div. 60.

" As was suggested in *Dean* v. *Gilbert*, 92 Hun, 427, the amendment may be regarded almost as a correction of the name of the plaintiff rather than the substitution of an entirely distinct and different party from that named and referred to in the allegations of the complaint."

This court has been very liberal in allowing the addition or substitution of new parties, even after the Statute of Limitations has run, where the cause of action remains unchanged. This court recently, in *Murray* v. *N. Y., Ontario & Western R. R. Co.* (242 App. Div. 374), in November, 1934, decided that an action for wrongful death brought in this State under the Pennsylvania statute where the action was originally brought by the father of decedent instead of by both parents, as required by Pennsylvania law, that the mother might be substituted as plaintiff upon the death of the

father, notwithstanding the Statute of Limitations had run at the time of substitution. (See, also, *Weldon* v. *United States*, 65 F. [2d] 749.) In *Missouri, Kansas & Texas Railway* v. *Wulf* (226 U. S. 570) the Supreme Court of the United States held that an amendment allowing plaintiff to sue on the same cause of action as personal representative under the Federal statute instead of as sole beneficiary of the deceased under the State statute was not equivalent to the commencement of a new action and was not barred by the Statute of Limitations. At page 576 the United States Supreme Court said: " Nor do we think it was equivalent to the commencement of a new action, so as to render it subject to the two years' limitation prescribed by § 6 of the Employers' Liability Act. The change was in form rather than in substance. *Stewart* v. *Baltimore & Ohio Railroad Co.*, 168 U. S. 445. It introduced no new or different cause of action, nor did it set up any different state of facts as the ground of action, and therefore it related back to the beginning of the suit. *Texas & Pacific Ry. Co.* v. *Cox*, 145 U. S. 593, 603; *Atlantic & Pacific R. R. Co.* v. *Laird*, 164 U. S. 393, 395. See also *McDonald* v. *State of Nebraska*, 101 Fed. Rep. 171, 177, 178; *Patillo* v. *Allen-West Commission Co.*, 131 Fed. Rep. 680; *Reardon* v. *Balaklala Consol. Copper Co.*, 193 Fed. Rep. 189."

Many other decisions might be cited, all going to show the liberality of our courts in not closing the doors against a valid claim since the Statute of Limitations has run in fact, and not in form.

The court below held that the defendant had sufficiently established its two counterclaims against the coplaintiffs, curators in bankruptcy, the first counterclaim being in the sum of $3,725.19, which included stipulated interest to the date of the verdict computed by the defendant, and the second counterclaim being in the sum of $159,616, which also included stipulated interest to the date of the verdict, making a total set-off in favor of the defendant against the coplaintiffs, curators in bankruptcy, in the sum of $163,341.19. The first mentioned counterclaim arose by reason of costs paid by the defendant on the reversal of the judgment in China, and which the defendant had never collected of the plaintiff. The second, or larger, counterclaim arose from advancements claimed to have been made by the defendant in connection with a consignment of oriental goods from the plaintiff to the defendant, amounting, as stated in the answer, to $93,422.72, and which, with interest, amounted to the sum allowed. The plaintiff concedes that the defendant is entitled to maintain a counterclaim in a substantial amount, but claims that the defendant was remiss in not

obtaining the highest price for goods received on consignment. It is possible the court allowed the sums stated without sufficient deductions, but, we think on the whole, the court, having heard all of the evidence, was justified in making the allowance which it did.

The judgment, as rendered, and from which both parties have appealed, should be, in all things, affirmed, without costs to either party as against the other.

FINCH, P. J., and TOWNLEY, J., concur; UNTERMYER, J., dissents and votes to reverse and dismiss the complaint of the coplaintiffs.

UNTERMYER, J. (dissenting). I dissent upon the ground that, without reference to other questions, the action of the coplaintiffs against the defendant is barred by the six-year Statute of Limitations applicable to actions for breach of contract (Civ. Prac. Act, § 48).

The contracts, for breach of which the coplaintiffs, as curators in bankruptcy of Laurent Van der Stegen, have recovered, were made between the Belgian Trading Company and the defendant Neuss, Hesslein & Co., Inc. The breach occurred on May 27, 1920. On June 20, 1920, the Belgian Trading Company, plaintiff's assignor, instituted an action for the breach of these contracts in the United States Court for China, which after trial resulted in a judgment against the defendant. While that action was pending Van der Stegen on September 4, 1923, was adjudicated a bankrupt by the Belgian Consular Tribunal at Shanghai, in consequence of which the present curators of his property were appointed by that court on April 23, 1924. The curators, however, were never substituted as plaintiffs in that action, which continued by amended petition in the name of L. Van der Stegen, doing business under the firm name and style of the Belgian Trading Company. From the judgment entered in the United States Court for China, the defendant appealed to the United States Circuit Court of Appeals for the Ninth Circuit, which, on February 8, 1926, reversed the judgment and dismissed the petition for want of jurisdiction over the defendant (10 F. [2d] 772). Upon its mandate, dated June 9, 1926, an order was entered in the United States Court for China dismissing the action.

After the Circuit Court of Appeals had reversed the judgment this action was commenced by the service of a summons on the defendant on February 16, 1926, in the name of Laurent Van der Stegen, doing business under the firm name and style of the Belgian Trading Company. The complaint was served on April 1, 1926.

Issue was joined on June 21, 1926. Thereafter Van der Stegen's attorneys, having learned of the intervening bankruptcy and the appointment of curators of Van der Stegen's property, on September 10, 1926, made a motion on his behalf to substitute the curators as parties plaintiff. The motion was denied on June 20, 1928, but on appeal, this court, on June 15, 1929, reversed the order to the extent of allowing the curators to be added as coplaintiffs without prejudice to any proceedings theretofore had (226 App. Div. 872). Not until September 16, 1932, did the curators avail themselves of the right accorded to them by serving a supplemental summons and complaint in the action. Not until then was their action begun. (Civ. Prac. Act, §§ 16 and 218.) It is important to observe, however, that the order of this court did not substitute the curators in the place of Van der Stegen. It merely permitted them to be joined as coplaintiffs and thereby reserved to the defendant all the defenses available to it. Indeed, it is very clear that the court could not have prejudiced the defendant's right to avail itself of the statute by allowing new parties to be joined. (*Harriss* v. *Tams*, 258 N. Y. 229; *Shaw* v. *Cock*, 78 id. 194; *Gray* v. *Vought & Co.*, 216 App. Div. 230.) When the coplaintiffs served their supplemental summons in the action pursuant to leave obtained, it constituted the commencement of the action as to them. The effect was the same as if, on September 16, 1932, they had begun an independent suit, which of course they could have done at any time without seeking the permission of the court.

The trial court has held that by the bankruptcy, Van der Stegen, by operation of law, had been divested of any cause of action which he may have had against the defendant. We are unanimously of the opinion that this conclusion is correct. It seems to me that if this be so, then the cause of action asserted by the curators as coplaintiffs, more than twelve years after it accrued, is barred by the Statute of Limitations.

The objection is attempted to be met by the argument that this action was begun by Van der Stegen on February 16, 1926, within the six-year period, and that the curators in some way are entitled to the benefit of this. I do not know upon what theory a party who is vested with a cause of action can abstain during the period of limitation from attempting to enforce it and then secure the benefit of an action to which he was not a party, instituted by a plaintiff without cause of action of any kind. When the cause of action accrued on May 27, 1920, the Statute of Limitations commenced to run. It continued to run against every one, except against a party who within the statutory period had

instituted suit. Concededly, when this action was commenced by Van der Stegen it could not be maintained by him. Manifestly also, a new action could not have been maintained by the curators when on September 16, 1932, they were introduced into the pending action by the service of their supplemental summons and complaint. I am at a loss to understand upon what theory two such actions, both of which would necessarily have been unavailing, may be so consolidated as to be effectual.

Section 82 of the Civil Practice Act is not applicable here. It might indeed have been applicable in the situation which existed in the Federal suit, where the bankruptcy intervened after the action was commenced. (*Melnick* v. *Commercial Casualty Ins. Co.*, 221 App. Div. 599, 601.) Here bankruptcy did not intervene after the commencement of the action. Two years before it had divested Van der Stegen of any cause of action against the defendant by transfer to the curators of all right and title therein. (*Foster* v. *Central National Bank*, 183 N. Y. 379, 384.) The curators made no attempt to assert their claim within the time limited by law. After their appointment on April 23, 1924, they could have caused themselves to be substituted as plaintiffs in the Federal action and thereby secured the benefit of section 23 of the Civil Practice Act when that action was dismissed for lack of jurisdiction. After the decision of the Circuit Court of Appeals on February 8, 1926, they could immediately have commenced an action here and avoided any question of the Statute of Limitations. We may even assume, notwithstanding the decision in *Streeter* v. *Graham & Norton Co.* (263 N. Y. 39), that without substitution in the Federal suit they might, under section 23 of the Civil Practice Act, have maintained an independent action here within one year after the dismissal of the Federal suit on the theory that, after Van der Stegen's bankruptcy, it was continued for their benefit. Yet they did none of these. They allowed the action to be prosecuted by a party against whom the defendant had the right to believe it had a complete defense and then at the expiration of twelve and one-half years they attempted to confront the defendant with new plaintiffs who, until then, had not undertaken to assert their claim by any judicial proceeding. This in my opinion they might not do. (*Matter of Schlesinger*, 36 App. Div. 77.) However desirable such a result may seem, I do not consider that the court should relieve these coplaintiffs from the operation of the statute upon any theory that Van der Stegen commenced the action here as a trustee for the curators, when in point of fact there was no trust of any kind, as the court below, in dismissing the complaint as to him, correctly held.

The decisions referred to by Mr. Justice MERRELL as sustaining the opinion to the contrary do not seem to me applicable here. *N. Y. C. & H. R. R. R. Co.* v. *Kinney* (260 U. S. 340) and *Rudkowsky* v. *Equitable Life Assurance Society* (145 Misc. 765; affd., 238 App. Div. 704) did not involve any substitution or change in the parties to the action. The only question in each of those cases was whether the complaint had been changed to assert a new cause of action by an amendment made after the expiration of the period of limitation. It was held that, unlike *Harriss* v. *Tams* (*supra*), the change did not, under the particular circumstances, involve the substitution of one cause of action for another but constituted merely an amplification of the cause of action originally asserted in the complaint. *Missouri, Kansas & Texas Railway* v. *Wulf* (226 U. S. 570); *Murray* v. *N. Y., Ontario & Western R. R. Co.* (242 App. Div. 374), and *Hulbert Brothers & Co.* v. *Hohman* (22 Misc. 248) are all instances of an amendment which only changed the capacity in which the same plaintiff maintained the action without introducing any new party or any different state of facts. We have a very different situation when an action, which could not have been prosecuted by the plaintiff originally instituting it, can be successfully maintained by the addition of new parties plaintiff against whom the Statute of Limitations has run. That distinction was fully recognized and applied in *Johnson* v. *Phœnix Bridge Co.* (197 N. Y. 316).

For these reasons the judgment, in so far as appealed from by the defendant, should be reversed and the complaint of the coplaintiffs dismissed.

Judgment so far as appealed from affirmed, without costs.