JOHN A. HARRISS, Respondent, v. J. FREDERIC TAMS et al., Doing Business under the Firm Name of TAMS, LEMOINE & CRANE, Defendants, and CHARLES KING, Appellant.

(Argued October 13, 1931; decided January 5, 1932.)

*R. Randolph Hicks* and *Lloyd F. Thanhouser* for appellant. It was error to permit the plaintiff, after the conclusion of the trial, to amend his amended complaint so as to substitute a new and different cause of action for the one previously pleaded. (*Hernandez* v. *Brookdale Mills, Inc.*, 119 Misc. Rep. 824; 205 App. Div. 882; *Burke* v. *Bonat*, 255 N. Y. 226; *First Nat. Nank* v. *Farson*, 226 N. Y. 218; *Bierman* v. *City Mills Co.*, 151 N. Y. 482; *Wait* v. *Borne*, 123 N. Y. 592; *Ahern* v. *Goodspeed*, 72 N. Y. 108; *Smith* v. *Tracy*, 36 N. Y. 79; *Lamphere* v. *Lang*, 213 N. Y. 585; *Brightson* v. *Claflin Co.*, 180 N. Y. 76; *Reed* v. *McConnell*, 133 N. Y. 425; *Romeyn* v. *Sickles*, 108 N. Y. 650; *Southwick* v. *First Nat. Bank*, 84 N. Y. 420; *Beer* v. *Clyde S. S. Co.*, 212 App. Div. 463; *Myers* v. *Brown*, 142 App. Div. 658; *Matter of Wood*, 193 App. Div. 473; *McNeil* v. *Cobb*, 186 App. Div. 177; *Walrath* v. *Hanover Fire Ins. Co.*, 216 N. Y. 220.) It was error to permit the plaintiff, long after the Statute of Limitations had run, to amend his amended complaint so as to substitute a new and different cause of action for the one previously pleaded. (*Dietz* v. *Harris*, 221 App. Div. 581; *Nathan* v. *Wolverton*, 149 App. Div. 791; *Luce* v. *New York, C. & St. L. R. R. Co.*, 213 App. Div. 374; *Northrup* v. *Village of Sidney*, 97 App. Div. 271; *Logeling* v. *N. Y. E. R. R. Co.*, 5 App. Div. 198; *Quimby* v. *Claflin*, 27 Hun, 611; *Van Syckels* v. *Perry*, 26 N. Y. Super. Ct. 621; *Dobbs* v. *Pearl*, 118 N. Y. Supp. 485.) Defendants, as agents for the seller, made no warranty of the speed of the boat. (*Matter of Case*, 214 N. Y. 199; *Kirsch & Co.* v. *Benyunes*, 105 Misc. Rep. 648; 191 App. Div. 904; *Lawton* v. *Keil*, 61 Barb. 558.) Assuming that defend-

ants did warrant the speed of the boat and that such warranty was unauthorized when made, it was subsequently ratified by the seller, who retained the purchase money with knowledge of the warranty, and defendants were thereby relieved of liability. (*Bloomquist* v. *Farson*, 222 N. Y. 375; *Taylor* v. *Commercial Bank*, 174 N. Y. 181; *Fairchild* v. *McMahon*, 139 N. Y. 290; *Krumm* v. *Beach*, 96 N. Y. 398; *Garner* v. *Mangam*, 93 N. Y. 642; *Baker* v. *Union Mut. Life Ins. Co.*, 43 N. Y. 283; *Elwell* v. *Chamberlin*, 31 N. Y. 611; *Bennett* v. *Judson*, 21 N. Y. 238; *Sharlette* v. *Lake Placid Co.*, 194 App. Div. 844; *Washburn* v. *Rainier Co.*, 130 App. Div. 42.)   It was error to award judgment against defendants for the full purchase price of the boat, as that would only be the proper recovery upon a rescission of the sale, and rescission cannot be asserted against an agent.   (*Commercial Credit Corp.* v. *Wells*, 228 App. Div. 402; *Zimmele* v. *American Plaster Board Co.*, 1 App. Div. 327; *Levy* v. *Horsfall*, 179 N. Y. Supp. 564; *Moore* v. *Maddock*, 251 N. Y. 420; *Taylor* v. *Nostrand*, 134 N. Y. 108; *White* v. *Madison*, 26 N. Y. 117.)

*C. Frank Reavis, Jr.*, and *Martin D. Jacobs* for respondent.   The amendment of the pleadings was a discretionary act clearly within the power of the trial court, and since this exercise of discretion has been upheld by the Appellate Division, there can be no question of law for the Court of Appeals. (*Deyo* v. *Morss*, 144 N. Y. 216; *Feizi* v. *Second Russian Ins. Co.*, 199 App. Div. 775; *Meyer* v. *Redmond*, 205 N. Y. 483; *Dahlstrom* v. *Gemunder*, 198 N. Y. 449; *Luckes* v. *Meserole*, 132 App. Div. 20; *White* v. *Madison*, 26 N. Y. 117; *New Georgia Nat. Bank* v. *Lippman*, 249 N. Y. 307; *Shirley* v. *Bernheim*, 123 App. Div. 428.)   That the amendment was allowed at a time when the new cause of action would have been barred by the Statute of Limitations, while a matter to be considered by the trial court in the exercise of its

discretion, was no bar to the relief. (*Foster* v. *Central Nat. Bank*, 183 N. Y. 379; *Eighmie* v. *Taylor*, 39 Hun, 366; *Hatch* v. *Central Nat. Bank*, 78 N. Y. 487; *Sherri* v. *National Surety Co.*, 243 N. Y. 266; *Martin* v. *Home Bank*, 160 N. Y. 190; *Hodges* v. *Tennessee Marine & Fire Ins. Co.*, 8 N. Y. 416.) The evidence is sufficient to support a recovery for breach of the implied warranty of authority. (*Hawkins* v. *Pemberton*, 51 N. Y. 198; *Coleman* v. *Simpson, Hendee & Co.*, 162 App. Div. 335.) Defendant cannot avoid liability on the ground that plaintiff could have recovered from the seller, for there was no liability or ratification on the part of the seller. (*Smith* v. *Tracy*, 36 N. Y. 79; *Baldwin* v. *Burrows*, 47 N. Y. 199; *Deyo* v. *Hudson*, 225 N. Y. 602.) The damage caused by the breach of the implied warranty of authority consisted of the money paid to the seller for a boat which plaintiff did not accept because it did not conform to the warranty made. (*Gotham Nat. Bank* v. *Sharood*, 23 Fed. Rep. [2d] 567; *Taylor* v. *Saxe*, 134 N. Y. 67; *Moore* v. *Maddock*, 251 N. Y. 420; *Taylor* v. *Nostrand*, 134 N. Y. 108; *White* v. *Madison*, 26 N. Y. 117.)

LEHMAN, J. The defendants acting as brokers negotiated the sale to the plaintiff of a motor boat belonging to one Richards for the price of $18,000. The evidence supports findings of the trial judge that the defendants represented to the plaintiff that the motor boat would be in first class condition and repair when delivered to the plaintiff, and that it was capable of making a speed of twenty-eight miles an hour. The motor boat was never capable of making such a speed, and the owner testified that the defendants were not authorized to represent that it was capable of making such a speed or that its engine would be put in a condition which would make the boat capable of such speed. The trial judge further found that the boat was never delivered to or accepted by the plaintiff and that the plaintiff is entitled to recover

from the defendants the purchase price he paid to the owner, in advance of delivery, with interest from May 1st, 1919, the date of such payment.

An agent impliedly warrants his authority to make the representations through which he induces another to make a contract with the principal. For the breach of that implied warranty the agent is liable to the injured party for all damages which flow naturally from reliance upon the agent's assertion of authority. (*Moore* v. *Maddock*, 251 N. Y. 420, and cases there cited.) The injured party in an action for moneys had and received cannot recover from the agent moneys paid upon the contract to the principal, for the agent has never received such moneys and they would be recoverable from the principal only upon a rescission of the contract made with the principal. (*American Nat. Bank* v. *Wheelock*, 82 N. Y. 118.) The courts below have not ignored these well-established rules, though in this case the damage assessed against the agent is the amount paid to the principal, as the purchase price of the boat with interest from the date of payment. They have held that in spite of these rules, these damages flow naturally from the agent's failure to bind his principal upon the collateral warranty of speed because through that failure the buyer in this case has been deprived of a right he would otherwise have had to reject the boat and to recover the purchase price from the seller.

Even if the alleged representation of the speed of the boat had been authorized by the seller and constituted a warranty, the buyer could not have rejected the boat and recovered the purchase price without rescission of the sale or contract to sell. It is, at least, doubtful whether the loss flowing from a failure to obtain a right to rescind a contract can be measured by the consideration paid upon the contract, for the gain from restitution upon a rescission would be, to some extent, balanced by the loss of the benefits which might have been obtained from enforce-

ment of the contract, authorized by the principal. We do not reach that question here, because the buyer in fact has the same right to rescind the contract he would have had if all the agent's representations and warranties had been authorized by the principal.

The seller delivered to the plaintiff in this case the muniments of title to the boat at the time he received the purchase price. At that time the seller did not know that the agent had falsely represented or warranted the speed of the boat. The seller's receipt of the purchase price and its retention without such knowledge can constitute no ratification of the agent's authority, and will not render him liable upon a collateral warranty or contract made by the agent in excess of his actual or apparent authority. So this court has held in *Baldwin* v. *Burrows* (47 N. Y. 199); and the court there stated that this was true even "though such collateral contract may have been the means by which the agent was enabled to effect the authorized contract, and the principal retain the proceeds thereof after knowledge of the fact" (p. 215). None the less, the court, in that case, recognized that a principal cannot enforce a contract which "is tainted and vitiated by the fraud employed by his agent in obtaining it; and the principal, though himself innocent, takes it subject to that taint" (p. 215). (See, also, *Smith* v. *Tracy*, 36 N. Y. 79; *Krumm* v. *Beach*, 96 N. Y. 398.)

No obligation can be imposed upon the principal by the act of an agent outside of his real or apparent authority; but a contract made on behalf of the principal may be rescinded by the other party if tainted by fraud in its inception, though the principal was himself innocent of any fraud. (*Bennett* v. *Judson*, 21 N. Y. 238.) That is not because through retention of moneys received upon a contract made by an authorized agent, an innocent principal ratifies the unauthorized acts of the agent in procuring the contract, but because a principal who

asserts the validity of a contract made by the agent holds the contract subject to any invalidity or taint in its inception. That distinction runs through all the cases in which rights based upon unauthorized representations or warranties of an agent have been asserted against the principal. It was pointed out in the opinion of POUND, J., in *Deyo* v. *Hudson* (225 N. Y. 602).

Here the plaintiff does not assert that he has lost a right to rescind the contract on the ground of fraud. We are not called upon to decide whether the proof is sufficient to show fraud. We point out only that where there are misrepresentations in negotiating a contract, the injured party has the same right to rescind the contract, though the representations were made by an agent without authority, as he would have if the representations were authorized by the principal. The same rule applies where as here the injured party asserts that because the agent was not authorized to give a warranty, he has lost the remedy which would have been, otherwise, available against the seller to " rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid." (Pers. Prop. Law; Cons. Laws, ch. 41, § 150, subd. 1 [d].)

" The remedy of rescission, if allowed at all, is allowed on broad principles of justice. The basis of the remedy is that the buyer has not received what he bargained for." (2 Williston on Sales, § 608.) The price is the consideration paid for the bargain, and here the plaintiff has not received the full benefit of his bargain. He accepted the muniments of title without knowledge that what he received was other than what he had agreed to buy; but the seller accepted the price without knowledge that it was the consideration for something other than what he agreed to sell. So long as retention of the purchase price even after the seller has knowledge of the unauthor-

ized warranty is not inconsistent with a repudiation of any obligation arising from the warranty, no ratification of the agent's acts can be inferred from such retention. At least until the buyer offers to return the goods and to rescind the sale or contract to sell, the seller is entitled to retain the proceeds of the sale he authorized without impliedly agreeing to accept additional obligations which he never authorized. The situation changes when the seller refuses to relinquish an advantage he gained through an unauthorized misrepresentation of his agent. "The morality of taking advantage afterward of false statements innocently made, by insisting on retaining the advantage of a sale induced thereby, is almost as questionable as that of making knowingly false statements to bring about the sale." (2 Williston on Sales, § 608.) In the old case of *Elwell* v. *Chamberlin* (31 N. Y. 611, at p. 619) this court has held that principals who after offer to rescind, retain or demand the fruits of a contract obtained by unauthorized representations of an agent "stand in the same position as if they had made the representation or authorized it to be made." We have never departed from that rule, and it has been accepted generally. (See 2 Williston on Sales, § 445-a, and cases there cited.)

It follows that the plaintiff lost no right to rescind the contract and to recover the purchase price from the seller by reason of the agent's breach of warranty of authority to make representations or give warranties of speed in behalf of the principal. He did lose the right to recover damages against the principal for breach of warranty of speed. That measures the damages recoverable against the agent, and the judgment must be reversed because there is no proof of such damages.

So far we have treated the action as one for breach of the defendant's warranty of authority to make representations on behalf of his principal. In truth, the complaint served on the defendants alleges no such cause of

action. The complaint alleges that the defendants were engaged in " the business of buying and selling yachts and ships as principals and agents." That the defendants made certain representations " for the purpose of inducing the plaintiff to purchase a certain motor yacht or boat known as the *Get There* belonging to one Fred L. Richards." Nowhere is there any allegation that the defendants in making these representations acted in behalf of the owner of the boat or impliedly asserted that they had authority from him to sell the boat or to make representations binding upon him. The complaint does not even allege a purchase of the boat from the owner. On the contrary, the complaint alleges that " thereupon the plaintiff and the *defendants duly entered into a contract whereby the defendants duly agreed to deliver* the motor yacht in accordance with the representations hereinabove set forth for the sum of Eighteen thousand dollars, said moneys to be paid either to the defendants or the said Fred L. Richards as the defendants should elect, and the defendants then and there duly agreed that if said motor boat did not accord with the representations so made as aforesaid, that the defendants would return the Eighteen Thousand Dollars to the plaintiff." It is for breach of the alleged agreement, made by the defendants, to deliver a motor yacht in accordance with their own representations and warranties, or return the purchase price to the plaintiffs, that this action is brought.

The parties went to trial upon the issues raised by the answer to this complaint. At the opening, the plaintiff's counsel stated, in answer to a question by the trial judge, that the complaint set forth a cause of action against a broker upon a dual theory, " first, on an alleged promise to bind that broker individually " and secondly that " the representations and agreements made by that broker were not authorized by the principal." Counsel for the defendants did not acquiesce in this statement nor did the court rule upon it at that time. Throughout

the trial, counsel for the defendants assumed the attitude, in which the court acquiesced, that recovery could be had only in accordance with the allegations of the complaint, unless a motion to amend the complaint was granted. During the trial some evidence was admitted that the owner of the boat had not authorized any warranty of speed, but as the pleadings then stood the defendants were not called upon to offer a defense to a cause of action which was not pleaded in the complaint. At the close of the trial the defendants were entitled to a dismissal of the cause of action alleged for breach of contract.

Then for the first time the plaintiff moved to amend the complaint to " conform to the proof." That motion was denied and the plaintiff thereupon moved to amend the complaint to allege a cause of action for breach of the brokers' implied warranty of authority to make the representations they did. The court reserved decision upon this motion but in its opinion granting judgment in favor of the plaintiff stated that plaintiff's motion to amend was granted. For the purposes of this appeal we will assume that a ruling made in the opinion effectively amended the complaint. The defendants urge that they cannot by such an amendment be deprived of their right to interpose as a defense the bar of the Statute of Limitations to a cause of action which concededly arose in 1919 and which was not pleaded till 1930.

Amendment of a complaint is a procedural step in bringing a dispute before the court for arbitrament. Where the parties to the dispute are before the court, the court is not required to dismiss them from its presence because the issues in that dispute have not been formulated by the pleading. The court may by amendment mould the pleadings to formulate such issues and a defendant may not complain so long as he receives notice and opportunity to defend. Forms of pleading and procedure were originally devised as an aid to the administration

of justice. They defeat their purpose when they result in an inflexible formalism. Each extension of the power to amend pleadings results in greater flexibility in the administration of justice. When that power shall be exercised rests in the discretion of the court. We do not review that discretion, even where the power to amend is exercised in order to avoid the bar of the Statute of Limitations. (*Hatch* v. *Central Nat. Bank*, 78 N. Y. 487.) Where the complaint alleges facts which though insufficient to constitute a cause of action yet apprise the defendant that the action is brought to remedy an alleged wrong, the fact that unless the complaint is amended the plaintiff may be barred from all remedy may indeed be a potent factor in moving the court to exercise its power to permit an amendment. This court has said that " the power of the Supreme Court to grant an amendment is most plenary. It may permit a plaintiff by an amendment of a pleading to bring in additional claims which at the time would be barred by the Statute of Limitations if a new action were then brought upon them." (*Foster* v. *Central Nat. Bank*, 183 N. Y. 379, 385.) What was said there about the Statute of Limitations was merely intended as an illustration of the extent of the power of the court. In fact, the court there decided that, however wide the power, it had in that case been exceeded by the court. Certainly there was no intention to decide, by dictum, that by an amendment to a complaint a plaintiff can avoid the bar of the statute to any cause of action which he chooses to substitute for the cause of action originally pleaded, or preclude a defendant from interposing any defense to the new cause of action.

The rule established in this State is that: " There is no doubt that the court may, at Special Term, allow an amendment of a complaint by introducing therein even a cause of action barred by the Statute of Limitations. But in such case the defendant must not be deprived of

his defense of the statute." (*Davis* v. *N. Y., Lake Erie & Western R. R. Co.,* 110 N. Y. 646, 647.) The same rule is generally followed throughout the United States (*Union Pacific Ry. Co.* v. *Wyler,* 158 U. S. 285, and cases there cited), at least where the courts have been given plenary power to permit an amendment. The Statute of Limitations provides that " an action upon a contract obligation or liability express or implied " must be commenced within six years after the cause of action accrued (Civ. Prac. Act, § 48). Until the complaint is served in an action, perhaps even until the time has elapsed during which the complaint may be amended as of right, it may be impossible to determine definitely upon what obligation or liability the action is brought. After that time the nature of the action is definitely determined; it is brought upon the obligation or liability set forth in the complaint. Then the Statute of Limitations has ceased to run against a cause of action founded upon that obligation or liability. It continues to run against all other causes of action. No doctrine that an amendment of the complaint relates back to the beginning of the action can change the fact that though the plaintiff may, with leave of the court, abandon the cause of action originally pleaded upon a specified obligation or liability and substitute a cause of action upon a different obligation or liability, yet until the substitution is made no action has been commenced or is pending upon the substituted cause of action. Upon that cause of action the statute has continued to run, and its bar may be interposed when by amendment to a complaint it is substituted for a cause of action brought upon another obligation.

It would serve no purpose to analyze the multifarious cases in different jurisdictions where the courts have been called upon to decide whether the Statute of Limitations constitutes a defense to a cause of action set forth

in an amended complaint. Though they agree on the general principle that a defendant is not precluded from setting up the Statute of Limitations as a bar to a cause of action substituted by amendment to a complaint for another cause of action upon a different obligation or liability, it is difficult, perhaps impossible, to formulate from these decisions any test, universally applicable, of what constitutes a different obligation or liability. " If the amendment merely expanded or amplified what was alleged in support of the cause of action already asserted, it related back to the commencement of the action and was not affected by the intervening lapse of time [citing cases]. But if it introduced a new or different cause of action, it was the equivalent of a new suit, as to which the running of the limitation was not theretofore arrested [citing cases]." (*Seaboard Air Line Railway* v. *Renn*, 241 U. S. 290, 293.) Perhaps in these cases we can discern an increasing liberality in determining what constitutes " a new or different cause of action."

The amendment may constitute for some purposes more than an amplification or extension of the cause of action already asserted, and may introduce what might, if technical considerations or ancient formulas apply, constitute a new and different cause of action. The question here is whether the action from its commencement was upon the same obligation or liability, though the cause of action to enforce that obligation or liability has been changed, or a new remedy has been asserted. So the Supreme Court of the United States has said: " Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the Statute of Limitations do not exist, and we are of opinion that a liberal rule should be applied." (*N. Y. C. & H. R. R. R. Co.* v. *Kinney*, 260 U. S. 340, 346.)

Perhaps the judicial formulation of a definite test in

determining what constitutes a different obligation or liability might hamper rather than guide the courts. Perhaps to some extent the determination must be made pragmatically, based on considerations of fairness. (See Clark on Code Pleading, pp. 75, 83, 513; Clark and Yerion, Amendment and Aider of Pleadings, 12 Minn. L. Review, 97; McCaskill, Actions and Causes of Action, 34 Yale Law Journal, 614.) Even where an action in equity for rescission of a contract on the ground of fraud is by amendment changed to an action at law for damages, it has been said that " the proceeding at law was but pursuing toward a conclusion, in another form, the same cause of action stated in the original bill, so that the suspension of the Statute of Limitations continued, which began with the date of the service of the subpœna in chancery." (*Friederichsen* v. *Renard*, 247 U. S. 207, 210.)

Here it is clear that, however liberal the rule, the amendment introduced a cause of action upon a different obligation or liability, and for different conduct from that specified in the original complaint. The original complaint, as we have shown, was for breach of a contract made by the defendants as principals to deliver a boat which would comply with representations made by them or to return the stipulated purchase price of the boat. Though the complaint alleges that the boat was owned by another party, the complaint contains no allegation, express or implied, that the defendants in making the representations acted as agents of the owner or that the plaintiff was induced to enter into a contract with the owner. The defendants from the beginning of the action had notice that the plaintiff claimed that the representations they made as principals were untrue, but an agent assumes no personal obligation and is subject to no liability if he, innocently, makes false representations in behalf of his principal. The defendants could meet the cause of action originally pleaded by proof that they had given no personal warranty and had made no personal

representations and had entered into no personal contract with the plaintiff to return the money if the representations they are alleged to have made proved untrue. They had no notice until the trial that if the plaintiff failed to sustain the allegations of the complaint he would try to enforce a different claim, negatived, indeed, by the allegations of the complaint, that the defendants had throughout acted as agents and had given an implied warranty of their authority to act for their principal in all they did. Until an action is brought to enforce a claim upon the alleged obligation of the defendants incurred by making representations or giving a warranty in behalf of the principal without authority from him the reasons for the Statute of Limitations exist and the statute by its terms continues to run. It may be interposed when a cause of action to enforce that obligation is pleaded either in a new or an amended complaint.

A different situation would be here if upon a new trial the plaintiff should be granted leave to amend his complaint to set up a cause of action against the defendants upon an obligation arising from a warranty that the boat would make a speed of twenty-eight miles an hour personally given by the defendants, in order to induce the plaintiff to purchase the boat. Perhaps the evidence would be sufficient to sustain a finding that the defendants assumed such obligation; perhaps the action might be said to have been brought originally to enforce that obligation, though the complaint served alleged the obligation imperfectly and asked a remedy for its breach by enforcement of an alleged promise to return the purchase price if the representations embodied in the warranty were untrue. We do not now attempt to pass upon possible questions which may arise upon a new trial. Now we decide only that the defendants have the right to interpose the bar of the Statute of Limitations to a cause of action upon an implied warranty of an

agent's authority, and that the damages awarded for breach of that implied warranty are erroneous.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.