Shientag, J.
This proceeding was brought pursuant to section 110-a of the Civil Practice Act to remove from the City Court to the Supreme Court, New York County, an action pending in the City Court. Section 150 of the Personal Property Law, as amended by chapter 276 of the Laws of 1948, permits a plaintiff purchaser in an action for rescission, founded in breach of warranty, to recover such damages as are not compensated by the recovery of the purchase price paid. Plaintiff argues that the amended section permits a larger recovery on the claim sued for and that he should have the advantage of it. He requested leave, therefore, to remove the case to the Supreme Court and to amend the complaint to ask for a total of $55,000 damages.
The case of Max Victor, plaintiff, against de Maziroff, Hermann and Kipnis was begun in the City Court January 15, 1946. It is alleged, in the first cause of action, that on August 18, 1943, defendants sold to plaintiff a self-portrait of Peter Paul Rubens for the sum of $2,000, which plaintiff paid; that the defendants jointly and severally warranted the portrait to be a true and authentic portrait painted by the said Rubens; that the warranties and representations were untrue and that the work was of an artist other than Rubens; that the plaintiff was ignorant of the falseness of the warranties and did not discover them until May 4, 1945. It is then alleged that he offered to return the portrait but defendants notified plaintiff that they would not accept the same. The plaintiff then demanded $2,000 damage. In his second cause of action, plaintiff alleges the same facts but bases his demand for the same damage on appropriate allegations of deceit.
Plaintiff attached to the moving affidavit a copy of the contract entered into on August 18th, between the plaintiff and the three defendants. It took the form of a letter directed to Max Victor, plaintiff, which was signed by George de Maziroff and *71 countersigned by the defendants Heimann and Kipnis. The offer was also accepted in writing on this letter by Max Victor. The letter acknowledged receipt of $2,000 as the consideration for the following mutual agreements and undertakings:
“ 1. I have this day turned over to Jacob M. Heimann of #140 West 57th Street, New York City, the self portrait of Peter Paul Reubens, on canvas 27 and % by 21% inches, framed, together with certificates of authentication of Dr. George M. Richter and Dr. W. Suida. Photostat copies thereof are transmitted to you herewith.
“2. Up to and including April 30, 1944 the firm of Jacob M. Heimann shall have the exclusive right to sell said painting for not less than Ten Thousand ($10,000.00) Dollars cash. It may be sold for less than that amount with your and my written consent only.
“3. In the event of sale the proceeds are to be disbursed as follows:
“ (a) $2,000 to you
“(b) Twenty-five (25%) per centum of the gross sales price to the firm of Jacob M. Heimann for commission and expenses.
“ (c) Of the balance remaining after the deduction of (a) and (b), I am to receive sixty (60%) per centum and you are to receive forty (40%) per centum thereof.
“ 4. In the event the painting is not sold on or before April 30, 1944, it shall become your property, free and clear of any and all claims of the firm of Jacob M. Heimann and of the undersigned.
“ I hereby represent that the said painting is authentic as established by the certificates herein referred to; that I own it free and clear of all claims; and I know that you are parting with the sum of Two thousand ($2,000.00) Dollars and agreeing to the above terms in reliance on my representation that I have a right to deal with this picture as herein set forth.”
It is this instrument which plaintiff claims was a contract for the sale of a painting by Rubens to him at a price of $2,000, and it is on this document that the plaintiff relies as to the representations supposedly made by the defendants concerning the authenticity of the painting. It is clear that this was a formal instrument and intended to be such, and represents the integration of all previous conversations between the parties.
On the assumption that this instrument amounts to a sale of the picture to the plaintiff in the event, which in fact occurred, that a sale was not effected at $10,000 or more to a stranger, *72 the plaintiff asked permission, as above stated, to take advantage of the recent amendment to the Personal Property Law. This section reads, in part, as follows, the new matter being printed in italics:
“ 1. Where there is a breach of warranty by the seller, the buyer may, at his election,
“ (a) Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price;
“(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty;
“(c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty;
“ (d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof, which has been paid, and damages recoverable in an action for breach of warranty to the extent that such damages are not compensated by the recovery of the purchase price paid or discharge of the buyer’s obligation to pay the same.
“ 2. When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted.” (Italics supplied.)
An examination of the recommendations of the Law Revision Commission to the Legislature (N. T. Legis. Doc., 1948, No. 65 [F]) in connection with this statutory amendment shows (p. 6) that “ the amendment of Personal Property Law, section 150, now proposed by the Commission, does not change the measure of damages for breach of warranty, nor does it affect the prerequisites to a rescission. It is designed to allow the buyer to obtain complete relief where his damages resulting from a breach of warranty are not compensated by recovery of the purchase price or discharge from the obligation to pay the price.” The commission further pointed out that in 1941, section 112-e of the Civil Practice Act was enacted. This provided that where a contract or other transaction was rescinded because of fraud or misrepresentation in the inducement, the rescission of the transaction and recovery of damages shall not be deemed inconsistent, and the aggrieved party shall be entitled to complete relief, including rescission of the benefits conferred by him as a result of the transaction and damages to *73 wMch he is entitled because of the fraud or misrepresentation, provided that such relief shall not include duplication of items of recovery. The commission was of the opinion (p. 5) that “ the rule governing the buyer’s remedy for a breach of warranty in the sale of goods should be harmonized with the principle of section 112-e of the Civil Practice Act.”
A good example of the results of perhaps innocent though careless warranty which may result in substantial damage over and above the original consideration, and which damage it was sought by this amendment to grant in a rescission case, is seen in Ashworth v. Wells (78 L. T. 136 [1898]). In that case, the plaintiff bought at auction some white orchid bulbs of a species previously unknown and paid 20 guineas for the plant. Two years later, after careful cultivation, the plant produced a purple orchid and thereby established its value at less than half a guinea. In an action for breach of warranty, the seller paid into court the purchase price that he had received, with interest. Evidence was given that a genuine white orchid of this species would be worth from 50 to 150 guineas, but to give the County Court jursidiction the claim was reduced to 50 pounds. The Court of Appeals held that the plaintiff was entitled to wait until the plant flowered to prove its value, and that when it flowered, as 50 pounds was to be taken to be the value of a plant according to warranty, plaintiff was entitled to recover that sum, including the amount paid into court.
While this seems to be an extreme case, it follows the usual rule that in cases of breach of warranty of quality the general measure of damages is the difference between the value of the article actually furnished the buyer and the value the article would have had if it had the qualities which it was warranted to have. (See 3 Williston on Sales [Rev. ed.], § 613; Bond Electric Corp. v. Gold Seal Electric Co., 271 N. Y. 461; Personal Property Law, § 150, subd. 7.)
The question remains, however, whether this amendment should be given retroactive effect. The statute became effective September 1, 1948, some months after it was passed. Plaintiff, in 1946, elected to rescind the transaction, entered into in 1943. At the time of bringing his action he could have affirmed the sale and sued to recover damages for breach of warranty of quality (Personal Property Law, § 150, subd. 7), but instead proceeded under paragraph (d) of subdivision 1 of section 150 of the Personal Property Law, which at that time limited the recovery to the price or any part thereof which has been paid.
*74 As was said by Cardozo, J., in Jacobus v. Colgate (217 N. Y. 235, 240): “ The general rule is that statutes are to be construed as prospective only (27 Halsbury’s Laws of England, p. 159). It takes a clear expression of the legislative purpose to justify a retroactive application (Isola v. Weber, 147 N. Y. 329; * * *). Changes of procedure, i.e., of the form of remedies, are said to constitute an exception (Lazarus v. Met. E. R. Co., 145 N. Y. 581; Laird v. Carton, 196 N. Y. 169) # * * J?
In the Jacobus case (supra) the court considered whether an amendment to the Code of Civil Procedure giving plaintiffs a right of action in respect of a trespass on land situated outside of the State was to be given retroactive effect. In deciding this question in the negative, the court said that the decisive consideration was that, until a statute was adopted, no remedy of any kind was available in any court. It was pointed out that it might well be that a retrospective statute would work greater hardships than any that it would avoid. The court relied on a decision made in the case of Isola v. Weber (147 N. Y. 329).
In that case, the court held that the provision of the Constitution of 1894, to the effect that “ ‘ The right of action now existing to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation ’ ”, did not operate retrospectively and did not affect causes of action which had accrued before it went into effect. The court adopted the opinion of Follett, J., in O’Reilly v. Utah, Nevada & California Stage Co. (87 Hun 406). The reasoning of Mr. Justice Follett was that the effect of the constitutional provision was to impose a greater liability on persons wrongfully or unlawfully causing the death of others and conferred additional benefits on persons in whose favor a right of action was given for such wrong. He stated that there were no circumstances which would justify an inference that the provision should have a retroactive effect, since the language of the section could be satisfied by giving it a prospective operation. All evils flowing from statutory provisions enlarging or diminishing rights or liabilities arising out of past transactions would be avoided.
A similar conclusion was reached in Shielcrawt v. Moffett (294 N. Y. 180). There the court refused to give retroactive effect to the amendment to section 61-b of the General Corporation Law, which limited the rights of minority stockholders to bring an action unless their holdings constituted 5% or more of the shares of the corporation or unless their shares had a value in *75 excess of $50,000, except on the giving of security for the expenses of the defense of the action to the corporation and the codefendants. The court pointed out that the line between a procedural statute and one providing a new remedy for an existing wrong, or a statute which interferes with antecedent rights or creates a remedy where none previously existed, is not always distinct, and in the end it is in consideration of good sense and justice that the solution must be found.
Applying these principles we find that the statute under consideration really changes nothing of substance. It abolishes the need for necessarily electing between the remedies provided for breach of warranty in the several subdivisions of section 150 of the Personal Property Law. The buyer always could accept the goods and sue for breach of warranty by way of recoupment (§ 150, subd. 1, par. [b]). In that event, if the Rubens were worthless because of its lack of authenticity, the measure of damage would have been “ the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty ” (§ 150, subd. 6). If the lack of authenticity be taken as equivalent to a false warranty of quality, then the damage is “ the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty ” (§ 150, subd. 7).
It is unnecessary to decide which of the two subdivisions would have been applicable in this case. We do decide that since a full recovery was possible before the amendment, the abolition of the limitation of recovery under paragraph (d) of subdivision 1 of section 150 amounts merely to withdrawing the purely procedural requirement of electing one of several remedies. No greater potential liability was put upon the seller by the amendment than existed before, provided the buyer brought his action under the proper section. We agree, therefore, with the learned court below that the statute should be given retroactive effect, since no evil results from so doing, and since it relates to procedure. We are not here concerned with any problem arising out of the running of the Statute of Limitations (Harriss v. Tams, 258 N. Y. 229).
The mere fact that an action could be brought for a larger amount is not, in and of itself, ground for removal from a court of limited jurisdiction. To warrant such removal, it must be shown by the moving party that there is some reasonable basis to his claim for increased damages. An examination of the complaint, the contract and the moving affidavit clearly indi *76 cates that any claim for increased damage, beyond the jurisdiction of the City Court, is entirely without foundation.
The second cause of action sounds in fraud. Under the decision of Reno v. Bull (226 N. Y. 546) the Court of Appeals confined the damages in deceit to the value of what the plaintiff parted with, less the value of what he received. (See, also, Smith v. Bolles, 132 U. S. 125.) Thus, even assuming that the second cause of action spelled out a fraud claim against the three defendants, not more than $2,000 could be recovered.
The action, therefore, should not have been removed to the Supreme Court. The order should be reversed, with $20 costs and disbursements to appellants and the motion denied.