Matthew M. Levy, J.
The plaintiff is the successor lessee of certain marine terminal realty situate in the City of New York. The leases involved were entered into in 1914 and 1915. The demises continue until 1975, with options of renewal to the year 2013. Generally, the leases require the payment hy the lessee of the specified monthly rental and impose upon the lessee the obligation to meet the expenses of substantial changes of construction or demolition, as well as to return the buildings at the expiration of the term in good order and repair. The focal point of the issues in this action is the interpretation to be given, in the light of the leases as a whole, to the following clauses, which require the lessee to: “ bear, pay and discharge all taxes, assessments, water rates and charges, of every nature and kind soever, ordinary as well as extraordinary, which shall or may during the term hereby granted and any renewal thereof be charged, assessed, imposed or grow due or payable out of or for said demised premises by virtue of any present or future law, rule, requirement, order, direction, ordinance or regulation of the United States of America, or of the State of New York, or of the corporation of the City of New York, or any authority what *571 soever # * *, and if the same shall not be paid within [a period of 30 days], the amount thereof may, at the option of the Landlord, be paid by the Landlord and be added to the next month’s rent, to be recovered in the same manner as and with the like remedy as if it had been part of the rent secured by this lease.”
The defendant is a public corporation created under the laws of the States of New York and New Jersey, under a compact between them approved by the Congress of the United States. Its property is not subject to New York City real estate taxes. In 1931, bi-State legislation was enacted authorizing the defendant to enter into agreements with municipalities, including the City of New York, to make annual payments “in connection with any marine * * * terminal property owned by it, not in excess of the sum last paid as taxes upon such property prior to the time of its acquisition by the Port Authority ” (L. 1931, ch. 553; L. N. J. 1931, ch. 69). The purpose was to provide that “ municipalities in the Port of New York District [might] not suffer undue loss of taxes and assessments by reason of the acquisition and ownership of property therein by The Port of New York Authority
The defendant became the owner of the properties in question on March 1, 1956. On July 17, 1956, the defendant and the City of New York executed an agreement, effective as of March 1, 1956, by which the defendant was obligated to pay annually to the city an amount equal to the taxes paid for the fiscal year 1955-1956. Prior to March 1, 1956, the date of the acquisition of the properties by the defendant, the plaintiff had regularly reimbursed the defendant’s predecessor in title for the real estate taxes paid by the latter to the city on all of the properties covered by the leases. Since then the defendant has paid the taxes to the city and billed the plaintiff for them. Several of such bills were paid by the plaintiff; some were not.
This is an action for the return of these moneys, which the plaintiff alleges it paid to the defendant as a result of mutual mistake or as having been exacted from the plaintiff by the defendant by means of the defendant’s fraud or the defendant’s duress after protest by the plaintiff. In its answer, the defendant, in addition to denial of mistake, fraud and duress, sets up an affirmative defense that certain of the causes of action are time-barred; and another affirmative defense that, as it is not the owner of certain of the buildings involved but only the owner of the land, the plaintiff’s claims are affected thereby. The defendant also pleads a counterclaim for a declaratory judgment as to the rights of the defendant under the leases in question.
*572 Before me for disposition is a motion by the plaintiff for summary judgment (Rules Civ. Prac., rule 113) or partial summary judgment (Rules Civ. Prac., rule 114) and for dismissal of the counterclaim. The defendant has cross-moved for summary judgment on the counterclaim (Rules Civ. Prac., rule 114), for summary and partial summary judgment dismissing the complaint (Rules Civ. Prac., rules 113, 114) and to dismiss certain causes of action therein on the alleged ground that the court does not have jurisdiction of the subject matter (Rules Civ. Prac., rule 107).
On the first point — assuming that the applicable provisions of the leases required the plaintiff to pay the “ taxes ” — there could, of course, be no recovery back by the plaintiff of the money it paid the defendant therefor. On the other hand, if the leases should be interpreted the other way — that the plaintiff is not under a duty to pay the “ taxes ”■ — questions of fact remain, insofar as the plaintiff’s suit is concerned, as to whether there were fraudulent misrepresentations, mutual or unilateral mistakes, duress, unjust enrichment, etc. These questions would require a plenary trial.
Continuing the assumption that the plaintiff is not obligated to pay the ‘ ‘ taxes ’ ’ to the city under the leases, it is nevertheless— upon other grounds — not entitled to obtain total summary judgment under rule 113, for the return of the moneys it paid to the defendant. There is sharp dispute as to precisely what real estate is involved — ■ whether in some instances, it is the land exclusive of the buildings thereon, or, in all cases, both land and buildings. There are seven structures in all, and they are separately numbered in the relevant documents. The plaintiff points to the fact that, prior to the defendant’s ownership of the realty, the city, when it did assess real estate taxes on these properties, made such assessments against the then owner covering both land and buildings on all lots. But the defendant — admitting the ownership of all of the land and of Building No. 22 and denying the ownership of the other six buildings — points to the provisions in the leases showing that, while the demises cover both Building No. 22 and the land under it, they cover the land only on which the other six buildings are situated. As to these six parcels, it is clear that, in view of the conflict as to the question of ownership, the issue involving them cannot be resolved summarily. And, in view, also, of the absence of proof before me of specific tax assessments by the city of the land alone, the remedy of partial summary judgment is also unavailable under rule 114. This reasoning does not, of course, *573 apply to land and Building No. 22, since there is no issue here as to ownership or assessment.
That branch of the defendant’s motion which seeks dismissal of the plaintiff’s Fifth, Sixth and Seventh causes of action is grounded upon the claim that these causes were instituted more than one year after their accrual, and that therefore they are barred by the limitation established by chapter 301 of the Laws of 1950. These specific causes of action were contained in the amended complaint for the first time, and are completely new and different from those set forth in the initial complaint. The amended complaint was served on September 12, 1958. The causes of action as alleged accrued on April 24, 1956, November 2, 1956, and June 12, 1957, respectively. In the circumstances, the causes are barred by the time limitation fixed in the statute, and the defendant’s motion to dismiss them is granted (see Harriss v. Tams, 258 N. Y. 229, 239 ff.).
I come now to the principal problem in the case — raised by the defendant’s counterclaim for a declaratory judgment and the motions of the respective parties for summary judgment — as a whole: Is the defendant entitled to require the plaintiff to pay the real estate ‘ ‘ taxes ’ ’ on the properties referred to in the leases 1 The motions, in this context, do not involve any issues of fact — either as to equitable principles governing the plaintiff’s claim to restitution or the defendant’s dispute as to the precise realty affected. Nor does the Statute of Limitations have any bearing here. The question before me is now one of law only, and will be so resolved. Many cases have been cited, pro and con, in the complete and capable briefs of counsel, but no precedents squarely in point have been presented by them or found by me. I have therefore decided to do no more than to state my conclusion and to give my reasons therefor, without expanding this opinion by analyzing the authorities in an effort to apply or to distinguish them.
It is idle to speculate whether, when the leases were negotiated and drafted prior to their execution in 1914 and 1915, the parties did or did not have in contemplation the likelihood or possibility that some time during the ensuing century the realty involved would or would not become the property of a governmental agency exempt from the payment of real estate taxes. It is, however, correct to say that the leases as a whole did envisage that the expenses reasonably attributable to the demised premises are to be borne by the lessee. And it is consistent with reason and logic and justice to say that the lessee did undertake to pay a certain rental and that it did not expect to have that rent reduced during the term of the leases. It is thus my view *574 that the broad language of the leases covers the situation. I agree with the defendant’s argument that a net-lease obligation on the part of a lessee to pay not only “ taxes ”, but also “ charges ”, and to pay them “ of every nature and kind soever, ordinary as well as extraordinary ’ ’ and whether they are “ charged, assessed, imposed or grow due or payable out of or for said demised premises ”, and whether this is by virtue of any “law, rule, requirement, order, direction, ordinance or regulation ” not only of the Federal, State and municipal governments, but “any authority whatsoever ”, includes the so-called “ in-lieu-of-tax ” payments to be made by the Port of New York Authority to the City of New York on the property covered by the leases.
Let us suppose that the Port Authority were to convey the realty to a private company with lease-back for a century at nominal annual rent and with an option in the Authority to purchase the property when and if it chooses. The premises would then without doubt be directly taxable by the city, the private owner would be bound to pay the taxes, and the plaintiff would certainly be unable successfully to urge that it is not obligated to reimburse the private owner therefor. It seems to me that I should arrive at the same result in the present situation, notwithstanding that this device has not been utilized. The plaintiff’s motion for summary judgment in its favor is accordingly denied, and the defendant’s motion for summary judgment in its favor on the counterclaim is granted.
That determination is warranted, it seems to me, not only by the terms of the leases (which, of course, govern) but also by the public policy of preserving to a public landlord its tax exemption, of denying to a private company the benefit of a tax exemption afforded only to a governmental agency, by the equitable precept that the lessee should not be entitled to receive a windfall by virtue of the fortuitous circumstance of the public acquisition of the property it occupies, and by the social need of facilitating public improvements where possible without eliminating existing tax income customarily received by the mimicipality affected.
The motion and the cross motion in all of their respective branches are disposed of as hereinbefore indicated.