Henry W. Lengyel, J.
Both of these claims were consolidated for trial purposes with the understanding that the court would render separate judgments. As the claims are closely interrelated, we have decided that one written decision would more clearly delineate the factual situation presented to the court. Claim No. 41434 will hereafter be referred to as Claim “ A ” and Claim No. 45096 as Claim “ B ”.
Claim “ A ” is for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, which proceeding is described as Interstate Route 502-3-2.2 F.I.S.H. No. 61-3, Warren County (Glens Falls-Lake George Section), Map No. 230 Parcels Nos. 312, 313, and 314. Said map and description was filed in the office of the County Clerk of Warren County on November 6,1961 and personal service was made on the claimant on November 27, 1961. Said claim was filed with the Clerk of the Court of Claims on November 7,1962 and was also filed with the Attorney-General. The claim has not been assigned or submitted to any other court or tribunal for audit or determination. Claim “A” originally set forth alleged direct damages of $32,000 and consequential damages of $16,832.50. Claim “ A ” was amended by filing an amended claim on April 1, 1965, alleging direct damages in the sum of $7,500 and no consequential damages. This amended claim was filed with the Clerk of the Court of Claims and the Attorney-General on April 1, 1965, and has not been assigned or submitted to any other court or tribunal for audit or determination. Claimant at the close of its direct case moved to conform its pleadings to the proof and to increase claim “A” to $15,250. We reserve decision on said motion. We now grant same.
Claim “ B ” is for the appropriation of claimant’s land pursuant to section 117 of the Public Authorities Law and section 676-a of the Conservation Law of the State of New York, which *1074 proceeding is described as the Adirondack Mountain Authority in connection with the Prospect Mountain Scenic Highway and Recreation Area, Warren County, Map No. R-134, Lot No. 2. Said map and description was filed in the office of the County Clerk of Warren County on the 6th day of July, 1962 and personal service was made on the claimant on March 6, 1964. The claim was filed with the Clerk of the Court of Claims and the Attorney-General on the 1st day of April, 1965, and has not been assigned or submitted to any other court or tribunal for audit or determination. This claim was for direct damages of $34,100. However, claimant at the close of its direct case moved to conform its pleadings to the proof and to decrease Claim “ B ” to $26,000. We reserved decision'on said motion. We now grant same.
Before we discuss the question of fair market value and damages there are several problems which must be resolved.
As the land involved in both of these claims was held for school purposes, a governmental function of the claimant school district, the claimant did not have the right in 1962 to receive compensation for said land. As it could not receive compensation for said land claimant’s Claim “A” was subject to dismissal on motion. However, in 1963 the Legislature of the State of New York amended section 3 of the General Municipal Law to add school districts to those municipal corporations which had been given the right on March 8,1960 to sue for and receive just compensation for governmental property taken by the State and used for a substantially different purpose. The amendment of 1963, which added school districts, was made retroactive to and considered to be in full force and effect since March 8, 1960. As the land appropriation Claim “ A ” was complete on November 27, 1961, it comes within the purview of amended section 3 of the General Municipal Law and said amendment nullified the defect inherent in Claim “A” when made. (Cf. Central School Dist. No. 1 of Town of Colchester v. State of New York, 18 A D 2d 943, affd. 13 N Y 2d 1031; City of New Rochelle v. State of New York, 19 A D 2d 674, affd. 14 N Y 2d 559; City of Albany v. State of New York, 21 A D 2d 224.)
As previously stated Claim “A” demanded both direct and consequential damages for said appropriation. The bill of particulars filed with the State on February 13, 1964, set forth the claimant’s position that the highest and best use of this land when taken was as a school building site and that the remaining land was not suitable for school building. The bill of particulars then set forth direct damages of $7,500 and consequential damages of $16,000. However, in Claim “ B ” the *1075 claimant contended that the remaining land, which in Claim “A” allegedly had slight value, had a highest and best use of school building site and a value of $34,100, subsequently and at trial reduced to $26,000 as aforesaid. Apparently in an attempt to be logical the claimant then filed an amended Claim “A” in which it reduced its claim for direct damages to $7,500, subsequently and at trial increased to $15,250 as aforesaid, and dropped its claim for consequential damages. At that point the claimant prepared and apparently attempted to serve an amended bill of particulars reflecting this change of position but, in our opinion, such was not served on the State until the trial when it was handed to the State’s trial counsel.
The State took the position at the trial that the original bill of particulars controlled the proof that could be accepted by this court and objected to proof in Claim “B” based on a highest and best use of school building site as being outside the scope of paragraphs 5 and 9 of the original bill of particulars. The State also claimed surprise as a result of this testimony. We overruled on the ground of surprise and reserved decision on the other question. We now overrule the State’s motions directed to this point and also the motions made on the grounds of surprise which may not have been specifically ruled upon at the trial. We so rule for it is our opinion that the State was aware at the date of filing Claim “ A ” and the bill of particulars directed thereto, that the claimant contended a highest and best use of school building site. We point out the Claims “ A ” and “ B ” considered together amount to a total appropriation of claimant’s land. If the court accepts the initial highest and best use of school building site, which we do, the end result is two awards which of necessity will reflect the value attached to this type of land. The only problem is how to allocate said awards between these two claims, both awards being paid out of public funds but allocated to different departmental budgets. We do not consider that the allocation problem created a problem in the defense of these claims by the able trial counsel for the State. We do not appreciate the lack of attention paid by the school district’s attorney to procedural rules, nor the inartistic expression of amendments to Claim “ A ” and its original bill of particulars. However, we have accepted the Written amendments, even though not made upon motion and order of the court, to Claim “A” and its bill of particulars because said amendments did not change the cause of action presented by the claimant but merely made a change in allocation of damage caused by the appropriations. We believe our *1076 position in this respect is consonant with the modern and liberalized approach to the amendment of pleadings.
We point to Sayre v. State of New York (4 A D 2d 794) wherein it was stated: “ The power is conferred upon the Court of Claims to amend any claim ‘ in furtherance of justice for any error in form or substance (Court of Claims Act, § 9, subd. 8.) The language of the grant is consistent with the practice of ‘ an increasing liberality in determining what constitutes “ a new or different cause of action ” ’ and the departure from an undue reliance upon ‘ technical considerations or ancient formulas '. (Harriss v. Tams, 258 N. Y. 229, 242.) ” (See, also, Waldo v. State of New York, 2 A D 2d 730.)
We further point out that, in granting claimant’s motion to amend the pleadings to conform to the proof, we were within the. accepted boundaries of such practice. As was stated in A. W. Banko, Inc. v. State of New York (186 Misc. 491, 494): “ Amendment of pleadings to conform to the proof is provided by statute and by rule. (Civ. Prac. Act, § 434 [now CPLB 3025, subd. (c) ]; Bules Civ. Prac., rule 166 [now CPLR 3025, subds. (b), (e)]; Court of Claims Act, § 9; L. 1939, ch. 860; Bules Ct. of Claims, rule 16.) The practice in respect to amendments is liberal. In the search for truth pleadings may be neither enlarged nor restricted so as to deprive a party of his opportunity to litigate a substantial question.” As previously indicated we were not enamored by the tangled situation presented by claimant’s pleadings but, as we do not believe the State was deprived of its opportunity to ‘ ‘ litigate a substantial question ”, the “ search for truth” must prevail over an inartistic approach. We do point out that the “ search for truth ” is not as difficult, however, when closer adherence is paid to practice and procedure. In all fairness to the attorney of record we do believe much of the confusion in these claims was caused by the necessity for the amendment to section 3 of the General Municipal Law and the time lag involved, by the negotiations carried on between the school district and the State agencies involved as to whether or not all this land would be taken; and, by the question as to whether or not the claimant would have access to its remaining lands after the initial appropriation.
Claimant was the owner of said land by reason of a deed from Bussell and others to the Union Free School District of the Town of Caldwell recorded in Liber 176 of Deeds at page 468 of the Warren County Clerk’s office. Said Union Free School District was consolidated with claimant Central School District on July 1, 1950 and title passed to claimant by virtue of such consolida *1077 tion. The total land area was 50± acres. The -State by appropriation (Claim “A”) took!5.335± acres in an irregular pattern from the east and central area of .this property. Parcels 312 and 314 were acquired in fee and Parcel 313 in fee without access. However, until the State decided to build an overhead road in this location Parcels 312 and 314 were landlocked and without access. The State by appropriation (Claim “B”) took 34.538± acres leaving a small 0.127± acre parcel which was of no value but for which claimant renounced any claim for damages at the trial. Claimant’s proof was convincing and persuasive of the intent and feasibility of using this land for school building purposes. See Exhibits 8, 9, 10, 11, 12, and 13 and the testimony of supervising principal Chase and architect Donald Perkins. We viewed this property on four different occasions and in one instance walked the property extensively while in the company of both counsel. Although the property was of hilly terrain and covered extensively with woods and would be more expensive than flat or rolling land to prepare for building purposes, it would not in our opinion be a difficult task to so fit out this land. It is our opinion, and we so find, that the highest and best use of this property both before and after the first appropriation was for a school building site and that there were only direct damages involved in each appropriation.
The State took the position that, because of the hilly and tree-covered terrain and because -the land was west of and adjacent to land owned by the Village of Lake George and used as sewage disposal beds by the village, the highest and best use of subject property in both claims was for the growing of timber. We respect the honesty, sincerity, and ability of the State’s appraiser who has testified before us many times. However, we believe him to be absolutely and completely in error in his appraisal in both of these claims and we have not given any weight to his testimony. We believe he was overly influenced by the presence of the village sewer beds. These beds are of the flat, sunken variety and were modern and well maintained. We inspected the beds -and even in close proximity to the initial treatment area there was but slight odor. Furthermore, these beds were screened from the school building area by both village and school district land and would not have any effect on school district use except to make sewage facilities easily available to the school building. When one realizes the close proximity of this land to the center of Lake George, 1.2 miles, and the high demand for land in the Lake George area, ascribing a highest and best use of growing timber is, in our opinion, totally unrealistic. Also on viewing this general area we disagree with *1078 the State appraisers’ characterization of “Shanty Town” for the properties in the area of the claimant’s property.
We now come to the problem of valuation. The following quotation from Diocese of Buffalo v. State of New York (43 Misc 2d 337, 339, mod. 23 A D 2d 958) succinctly outlines our problem: “ By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adopted and might in reason be applied. (4 Nichols, Eminent Domain [rev. 3rd ed., 1962], § 12.2, subd. [1].) It must, however, be recognized that market value is always based on hypothetical conditions. Hence it is never necessary to show that there was, in fact, a person able or willing to buy. So while market value is still the measure, in the case of property held or improved in such a manner as to render it virtually unmarketable, means other than the usual methods of ascertaining value must, from the necessity of the case, be resorted to. It is, therefore, proper in such cases to deduce market value from the intrinsic value of the property, and its value to its owners for their special purposes. (4 Nichols, op. cit., § 12.32.) ” (See, also, Albany Country Club v. State of New York, 37 Misc 2d 134, 140, mod. 19 A D 2d 199, affd. 13 N Y 2d 1085; Matter of Simmons, 127 N. Y. S. 940.)
As school building site property has no income producing potentiality we believe that the most persuasive element in arriving at value in these claims is the replacement cost. We have therefore assigned great weight to the property purchased in Lake George by the claimant for a school building site. Said property contained 20 acres and was bought for $42,000. We have accepted claimant’s statement that the land in question would have cost $18,000 more to prepare for a school building than the new school site. We have also made adjustments downward .to reflect the fact that the new site was purchased several years after the condemnation dates of 1961 and 1962; that the new location is a more suitable location (we viewed the new site); and, that the claimant would have been required to either purchase or condemn certain right of way dirt trails in existence on subject property. We have also considered the other land values in the area. In our opinion the subject property had a fair market value in 1961 and 1962 for school building purposes of $500 an acre. We award the claimant in Claim No. 41434 the sum of $7,667.50 for all direct damages, with interest thereon from November 6, 1961 to May 6, 1962 and from November 7, 1962 to the date of entry of judgment herein. We award the claimant in Claim No, 45096 the sum of $17,269 for all direct *1079 damages, with interest thereon from July 6, 1962 to January 6, 1963 and from April 1, 1965 to the date of entry of judgment herein.
The awards to claimants herein are exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer, and railroad lines.
The parties hereto shall have 10 days from the date of receipt of this decision in which to submit proposed findings of fact which, if submitted, shall be marked in accordance with this decision and the requirements of CPLR 4213; if not submitted, they will be deemed waived.