PEOPLE ex rel. CUNNINGHAM v. BINGHAM, Police Com'r.

(Supreme Court, Appellate Division, Second Department. November 19, 1909.)

1. MUNICIPAL CORPORATIONS (§ 185*)—POLICE—REMOVAL—HEARING.
    New York City Charter (Laws 1901, p. 129, c. 466) § 302, which gives the police commissioner power, in his discretion, on conviction of a policeman, by him or any court or officer of competent jurisdiction, to punish the offender by dismissal, does not compel a commissioner to accept as conclusive an acquittal from conviction of a policeman for bribery in the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

criminal courts, on a hearing of charges against such officer for conduct unbecoming an officer.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 185.*]

2. MUNICIPAL CORPORATIONS (§ 185*)—REMOVAL OF POLICEMAN—HEARING.

A policeman, who was acquitted of bribery in taking from a saloon keeper money to avoid the latter's arrest, is not twice put in jeopardy by being thereafter tried by a police commissioner for neglect of duty and conduct unbecoming an officer, where the commissioner did not act alone upon the record of the criminal trial, but examined a number of other witnesses, as, in order that the principle of jeopardy apply, the former acquittal must have been for the same identical act and crime.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 185.*]

3. MUNICIPAL CORPORATIONS (§ 185*)—REMOVAL OF POLICEMAN—REASONABLE DOUBT.

On a hearing by a police commissioner of charges against a policeman for neglect of duty and conduct unbecoming an officer, the rule of reasonable doubt, as applied in criminal cases, does not apply.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 185.*]

4. MUNICIPAL CORPORATIONS (§ 185*)—POLICE—REMOVAL—EVIDENCE.

On hearing by a police commissioner of charges against an officer for neglect of duty and conduct unbecoming an officer, based on his act in demanding and receiving from a saloon keeper money to avoid the latter's arrest, evidence of alibi *held* not sufficient to overthrow a verdict of conviction.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 185.*]

Certiorari by the People, on the relation of John W. Cunningham against Theodore A. Bingham, as Police Commissioner, to review the dismissal of a policeman.

See, also, 132 App. Div. 899, 116 N. Y. Supp. 1144.

Argued before WOODWARD, JENKS, BURR, RICH, and MIL-LER, JJ.

Jacob Rouss (Louis J. Grant, on the brief), for relator.
James D. Bell, for respondent.

JENKS, J.   The relator was dismissed the police force upon conviction of neglect of duty and conduct unbecoming an officer.   It was charged that when off duty he went on a Sunday into a liquor place in the borough of Queens, arrested the keeper of it, took him and his wife two or three city blocks, and then returned with them to the place, instead of taking them to a station house, and that after such return he demanded and received from the keeper's wife $5 under the threat that, if the money was not given to him, he would take the keeper to the station house and prefer a charge against him.

Before the trial of these charges the relator was tried in the County Court of Queens county, and acquitted, upon an indictment for bribery resting upon this conduct.   By consent the record of that trial was read in evidence before the deputy commissioner who tried these charges, and the point is now made that the same testimony, if considered, should have been conclusive upon the commissioner of police.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

There is no requirement of statute to that effect. The learned counsel for the relator calls our attention to section 302 of the charter (Laws 1901, p. 129, c. 466), with the comment that, if the relator had been convicted upon the indictment, the judgment would have operated as a dismissal from the police force, and thereupon asks why the converse of the rule should not obtain. Even if it should, but does not, we cannot make it do so. But section 302 does not provide that such a conviction is ipso facto a dismissal, but merely that the police commissioner shall have power, in his discretion, on conviction by him or by any court or officer of competent jurisdiction, to punish the offender in various ways, including dismissal.

The point is also made that, as the acquittal on the indictment was conclusive on the commissioner, the relator could not be put again in jeopardy for the same charge. But, as I have said, the acquittal was not conclusive. Moreover, I think that the indictment and the charge before the commissioner are not to be regarded as the same offense, within the principle invoked by the relator, but rather, in the words of Harlan, J., in Grafton v. United States, 206 U. S., at page 354, 27 Sup. Ct., at page 755 (51 L. Ed. 1084), "but only that by one act he has committed two offenses"; that is, the one act, if committed, could constitute a violation of the criminal law, with the prescribed penalty of imprisonment, and also a neglect of duty and conduct unbecoming an officer of the police force, with the prescribed penalty of reprimand, or withholding pay, or suspension, or dismissal. In order that the principle of jeopardy apply, it is well settled that "the former acquittal or conviction must have been 'for the same identical act and crime.'" State v. Gustin, 152 Mo., at page 112, 53 S. W., at page 422, citing authorities.

The relator was not tried upon the same charge which was the subject-matter of the indictment; for the act which was charged as bribery in the indictment was charged as neglect of duty and conduct unbecoming an officer in an affair at the trial before the commissioner. It is to be noted that the commissioner did not act upon the record of the criminal trial alone, because a number of witnesses were called and examined before him. Although the relator was entitled to the rule of reasonable doubt in the criminal prosecution, that rule did not obtain in the hearing of the charges now under review.

Aside from the questions of jurisdiction, procedure, and violations of rules of law, the question before us is whether there was any competent proof of all the facts necessary to be proved in order to authorize the determination, and, if there were such proof, whether there was such a preponderance of proof against the existence of any of those facts that the verdict of a jury affirming such existence in an action in the Supreme Court would be set aside by the court as against the weight of evidence. Section 2140, Code of Civil Procedure. To sustain the charges, the keeper of the liquor place and his wife testified positively that the relator came to their place on a Sunday evening about 10 o'clock p. m., with another person, demanded and received and paid for sherry wine and beer, then the relator struck the keeper and ordered him to come to the station house, saying, "Give me $5," and then, after taking the keeper and his wife four or five blocks, the keeper was told that, if he

would pay $5, he could go home. The keeper answered that he did not have the money with him, but that they must go back to his place, which was done, when $5 was obtained from the wife's brother, and was paid to the relator. The wife corroborates her husband. Her brother testified that he furnished the $5, and that it was paid to the defendant. Two witnesses, who could not identify the persons, testify that they saw the keeper and his wife leave the place on that evening, led by two men, of whom one struck the keeper. The captain of the precinct testifies that the keeper and his wife identified the relator as their oppressor out of a number of his brother officers drawn up in line in the precinct station house.

The defense of the relator was the record of the trial in the County Court, which shows that he went upon the witness stand to deny everything, and that he gave evidence of an alibi. Several witnesses testified to the alibi. McMahon testified that about 10:10 o'clock on Sunday evening, January 7th, he saw the keeper and his wife and two men, but that neither of the men was the relator. Flynn testified that he remembered Sunday, the 7th day of January, and that he saw the relator, about 3 o'clock p. m., at the witness' house, 540 West Fifty-First street, in Manhattan, where he remained until 9 or 9:30 p. m. Giles testified that he saw the relator that night on the 10:20 boat on the Thirty-Fourth street ferry, coming from the borough of Manhattan; that they were in company for a time after they landed. He was sure of the hour, because he happened to look at his watch, inasmuch as he must be in his house at 10:30 p. m., or its doors would be locked upon him; but on cross-examination he said he thought it was the 20 minutes past 10 boat, that he looked at his watch, and that he ought to remember that he looked at it, because he had to see the time when he must be at home. The only other occasion that he remembered looking at his watch was one day when he set it by a school clock. Suss testified that he met the relator on a ferryboat that Sunday night—to the best of his knowledge a little after 10 p. m. He came off the boat, and left the relator at a certain place; that he determined the hour because he went over to the saloon across the street from the ferry house to get a drink, and he then noticed the time, which was 7 minutes past 10, and thereafter he went into the ferry house; that he took the 10:20 boat. Vichard testified that he was in company with Suss on that evening, and that he saw the relator on the boat that leaves after 10 o'clock, 10:30 or 10:20, and that he fixed the time because he saw the time by the clock on the ferry house. Wilson testified that he saw the relator on that night in Greenpoint, when he got off of a Greenpoint car, and that it was then 5 minutes of 11 by a certain clock that he noticed, known as "Clark's clock."

In my judgment the verdict of a jury in the Supreme Court would not have to be set aside, even if the jury believed the testimony of the keeper and his other witnesses that the transaction took place as testified to by those witnesses, to the disregard of the testimony for the relator as a defendant. Possibly a jury might have concluded that the witnesses, of whom each independently determined an hour, when each saw casually the same person, by the striking coincidence that each then consulted some time-piece, as the defendant testified he had done,

were not credible. Possibly a jury might have concluded that they were mistaken as to the day. Possibly a jury might have concluded that the plaintiff's witnesses were in error as to the exact hour of a transaction, which might have occupied but a few minutes. There is no proof upon the record of such an alibi, which, even if credited, made it physically impossible for the defendant to visit this place on that particular evening, and to do there what he is charged to have done.

I recommend that the determination be confirmed.

Determination confirmed, with $50 costs and disbursements. All concur.