Matthew M. Levy, J.
This action is brought pursuant to section 434a-20.0 of the Administrative Code of the City of New York by 11 members of the Police Department of the city to recover full pay for the periods when each of them was suspended by the commissioner without pay pending trial of charges, on which charges plaintiffs claim they were not convicted. The plaintiffs have moved for summary judgment and for judgment on the pleadings in pursuance of rules 113 and 112 of the Rules of Civil Practice, and the defendant has cross-moved for judgment pursuant to rules 112 and 113. The plaintiffs have moved in addition, pursuant to rules 103 and 104, to strike certain paragraphs of the answer as sham and frivolous, and, pursuant to rule 109, to strike the defenses as insufficient in law.
*313 The plaintiffs hereinafter will be referred to as the Brenner group and the Blessinger group, since the facts as to the other plaintiffs are similar to one or the other of these groups. The plaintiffs contend that they were suspended (the Brenner group on February 16, 1955, and the Blessinger group on June 28, 1955) pursuant to section 434a-20.0, and that the suspension was for charges made against them in informations filed in the Court of Special Sessions of the City of New York for the crime of conspiracy, in violation of section 580 of the Penal Law. The defendant admits that the plaintiffs were suspended on the days in question without pay and that the suspension was pursuant to section 434a-20.0, but alleges that each of the plaintiffs was suspended pending trial of Police Department charges of conduct unbecoming an officer, conduct prejudicial to good order, efficiency and discipline of the department, neglect of duty and violation of the rules and regulations, and that subsequently each plaintiff was convicted upon such charges. The plaintiffs contend that they were not found guilty of the departmental charges referred to, and, furthermore, that those charges were not those for which they were suspended.
The operative facts controlling determination of these motions are few, and they are as follows:
(A) With respect to the Brenner group:
1. The plaintiffs were arrested on February 16, 1955.
2. The plaintiffs were suspended on the same date.
3. As shown on Exhibit A attached to the answer (a copy of the official police teletype order — addressed “ To Whom It May Concern ’ ’ and ‘ ‘ To Commands Concerned ’ ’, and the entry made in the Police Department’s suspension book, dated February 16, 1955) the “ cause ” of the suspension is stated as: ‘ ‘ Arrested on bench warrants — Special Sessions Court, Brooklyn, charged with violation 580 of P. L. (Conspiracy).”
4. Charges and specifications within the department occurred on March 19, 1955. These state that:
“ I hereby Charge [the named nlaintiff] with CONDUCT UNBECOMING TO AN OFFICER AND CONDUCT PREJUDICIAL TO THE GOOD ORDER, EFFICIENCY AND DISCIPLINE OF THE DEPARTMENT AND VIOLATION OF THE RULES AND REGULATIONS.
‘ ‘ In that
‘11. Said [named plaintiff] having been arrested at 8:40 a.m. on February 16,1955 for the crime of Conspiracy (580 P.L.) to accept bribes, on authority of a Bench Warrant dated February 14, 1955 and signed by Thomas F. Horan, *314 Chief Clerk, Court of Special Sessions, Kings County, which warrant arose out of an information found by the ADDITIONAL MAY 1954 GRAND JURY OF KINGS COUNTY (AS EXTENDED) and which reads in part that said patrolman [the named plaintiff] ‘ * * * wilfully, knowingly, unlawfully and corruptly conspired, combined, confederated and agreed with and among each other and with and among divers other persons * * * to commit acts injurious to public morals and for the perversion and obstruction of justice and of the due administration of the laws * * * The purpose and object of the conspiracy, combination and agreement herein alleged, among others, was that persons violating traffic laws, ordinances and regulations concerning the operation of motor vehicles and the use of public highways in such operation, and other laws, ordinances and regulations, should not be apprehended or charged therewith, summoned, prosecuted or punished for such offenses, infractions and violations. ® * * ’ and that said patrolman [the named plaintiff] 1 * * * In or about the month of December, 1953, intercepted a motorist on the Belt Parkway in the County of Kings, and improperly failed and neglected to issue a summons to said motorist for violation of a traffic law, ordinance or regulation. ’ (Violation of Rules and Regulations 128 and 297.) ”
LO The plaintiffs were thereafter acquitted in Special Sessions.
CO The departmental charges and specifications were thereafter, on January 4, 1956, amended so as to read as follows:
“ I hereby Charge [the named plaintiff] with CONDUCT UNBECOMING AN OFFICER, CONDUCT PREJUDICIAL TO THE GOOD ORDER, EFFICIENCY AND DISCIPLINE, NEGLECT OF DUTY, AND VIOLATION OF THE RULES AND REGULATIONS.
‘ ‘ In that
“ 1. Said [the named plaintiff], while assigned to Motorcycle Precinct No. 2 in uniform and on patrol duty on various occasions from on or about June 24, 1946 to on or about February 16, 1955, and in and between said dates, was engaged in a common scheme or plan with other members of the Department and various other persons not members of the Department to extend unwarranted and unnecessary privileges or considerations and/or immunity to particular motorists, in that having ojbserved a motorist proceeding on a public highway in the State of New York *315 in violation of the law or traffic regulations, and having stopped said motorist for the purpose of taking necessary police action in connection with such violation, and upon presentation or display by the motorist of a card, identifying such motorist as one who should receive special privileges or considerations and/or immunity, said officer did knowingly, wilfully and corruptly consent or agree that such card granted to such motorist special privileges or considerations and/or immunity from necessary police action. (Violation or Rules 6, 128, 213 and 297.)
“ 2. Said [the named plaintiff] while assigned to Motorcycle Precinct No. 2 in uniform and on patrol duty on various occasions from on or about June 24, 1946 to on -or about February 16, 1955, and in and between said dates, did observe a motorist proceeding on a public highway in the State of New York in violation of the law or traffic regulations and having stopped said motorist for the purpose of taking necessary police action, and upon presentation or display by the motorist of a card, identifying such motorist as one who should receive special privileges or considerations and/or immunity, did unlawfully, wilfully and corruptly extend unwarranted and unnecessary privileges or considerations and/or immunity by failing to take necessary police action. (Violation of Rules 6, 128, 213 and 297.)
“ 3. Said [the named plaintiff] while assigned to Motorcycle Precinct No. 2 in uniform and on patrol duty on various occasions failed to carry out the specific duties of members of the Traffic Division to enforce the Vehicle and Traffic Law, the Traffic Regulations, and the ordinances and provisions of the Administrative Code relating to vehicular and pedestrian traffic on public highways, in that having stopped a motorist or motorists for the purpose of taking necessary police action, failed to take necessary police action. (Violation of Rules 128, 184, 297 and 435.)
“ 4. Said [the named plaintiff], while assigned to Motorcycle Duty in uniform on various occasions did fail and neglect to carry out the provisions of Motorcycle Conference Order dated May 1, 1953 and Teletype Order dated February 6, 1954, amended as per Teletype Order dated February 27, 1954. (Violation of Rules 128, 200, 201, 297 and 435.)
*316 “ 5. Said [the named plaintiff], while assigned to Motorcycle Precinct No. 2 did fail to report to his Commanding Officer conduct, disorder or neglect, to the prejudice of good order, efficiency and discipline which he had observed or of which he had knowledge on occasions designated in Specifications No. 1, No. 2, No. 3 and No. 4. (Violation of Rules 200, 201 and 435.) ”
7. After trial of the departmental charges and specifications, as amended, the plaintiffs were found by the commissioner not guilty as to amended specifications 1, 4 and 5, and as to amended specifications 2 and 3, they were found “ Guilty of unlawfully and wilfully extending an unwarranted and unnecessary privilege to a motorist and of failing to take necessary police action against him, otherwise Not Guilty ”.
8. On April 18, 1956, the plaintiffs were restored to duty, with pay, and received the following disciplinary sentence: “ To forfeit thirty (30) days pay and placed on probation for a period of one year
9. The plaintiffs were not paid for the period of their suspension.
(B) With respect to the Blessinger group:
1. Departmental charges and specifications were made on various dates between May 24, 1955 and June 3, 1955. The charges filed and served on the Blessinger plaintiffs were similar to the amended charges against the plaintiffs in the Brenner group. The Blessinger specifications were four in number, and, for the sake of brevity, I shall describe them as follows: specification No. 1 in the Blessinger case is substantially the same as amended specification No. 1 in the Brenner case, except that reference is also made in each instance to other rules alleged to have been violated. Specification No. 2 for Blessinger is essentially similar to the Brenner amended specification No. 3, except that while some of the rules cited are the same in each instance, there is reference in the Blessinger case to Rule 201 instead of Rule 184, as in Brenner. Blessinger specification No. 3 is quite similar to Brenner amended specification No. 4, but there is reference in Brenner to two additional rules. Specification No. 4 for the Blessinger plaintiffs is similar to amended specification No. 5 for the Brenner group.
2. The arrest and the suspension of the Blessinger group occurred on June 28, 1955, and, as appears from Exhibit F attached to the answer, the stated “ cause ” for the suspension here was the same in form, manner and content as in the case of the Brenner group.
*317 3. The Blessinger plaintiffs were thereafter acquitted in the Court of Special Sessions.
4. Thereafter, and on January 4, 1956, the departmental charges were amended. As amended, the charge did not contain the item of “ neglect of duty ”, as contained in the original Blessinger charges. The specifications were also amended, resulting in the following situation: The Blessinger amended specifications Nos. 1 through 5 were respectively identical with the similarly numbered Brenner amended specifications.
5. On April 18, 1956, the Blessinger plaintiffs, after departmental trial, were acquitted by the commissioner on amended specifications 1, 4 and 5, and convicted on amended specifications 2 and 3 “ of unlawfully and wilfully extending an unwarranted and unnecessary privilege to a motorist and of failing to take necessary police action against him ’ ’, the same as in the case of the Brenner plaintiffs.
6. Also, the Blessinger plaintiffs received the same disciplinary sentences as the plaintiffs in the Brenner group.
It seems to me wholly unnecessary, upon the basis of this submission and particularly in the light of the presentation of the issues in the respective briefs, to engage upon a consideration of the statements contained in the voluminous affidavits and exhibits other than the operative facts hereinbefore listed; for, while an extended discussion of the papers would present an interesting exercise in analysis, it would, I think, add nothing to the controlling proof or to the legal effect thereof. It will undoubtedly have been noted, from the foregoing statement of the facts, that there is one outstanding difference between the two groups of plaintiffs — as to the Brenner group, the suspension occurred about one month prior to the departmental charges, and as to the Blessinger group the suspension occurred approximately one month after the departmental charges. It will be noted, too, that I have not outlined the factual bases upon which the commissioner relied in convicting the plaintiffs. For, as I view the legal canvas painted for me in the instant controversy, the guilt or innocence of the plaintiffs is really irrelevant to the present issues. Indeed, it appears that the propriety of the departmental conviction and sentence is before the court in another way — there is pending a proceeding instituted by the plaintiffs in pursuance of article 78 of the Civil Practice Act to review the commissioner’s final determination.
The plaintiffs, in their brief, state the present issue to be: “ Were the plaintiffs, as they claim, suspended pending trial of the criminal conspiracy charged in the Court of Special Sessions and have they ever been convicted of that charge in that *318 Court or in any departmental proceeding! ” The defendant, on the other hand, states the issues to be: “ An analysis of the complaint, the answer, which includes defendant’s exhibits, and the affidavits reveal two main legal issues; namely (1) were plaintiffs suspended pursuant to section 434a-20.0 of the Administrative Code pending a departmental trial of departmental charges and (2) were plaintiffs convicted by the Police Commissioner of the 1 charges so preferred This latter issue necessarily involves further legal questions; namely, were the amended charges upon which plaintiffs were found guilty the same as the original charges and did the amended specifications ‘ 2 ’ and ‘ 3 ’ upon which plaintiffs were found guilty pertain to and directly involve the same facts and matter as contained in the original specifications.”
In my view, before the commissioner may suspend a member of the force without pay, in pursuance of section 434a-20.0 of the Administrative Code, charges must have been preferred against that member — either prior to or simultaneously with the suspension. I hold that the commissioner cannot suspend the police officer in a vacuum — at least to the extent of depriving him of his prescribed compensation — and, later, at the pleasure or leisure of the commissioner, prefer charges against him. This, I think, is made clear from the plain language of section 434a-20.0 of the Administrative Code, in pursuance of which the plaintiffs were suspended by the commissioner, and grounded upon which the plaintiffs have instituted this action. The section reads as follows: “ Suspension of members of [police] force,— The [police] commissioner shall have power to suspend, without pay, pending the trial of charges, any member of the force. If any member so suspended shall not be convicted by the commissioner of the charges so preferred, he shall be entitled to full pay from the date of suspension, notwithstanding such charges and suspension.” (Italics mine.)
There is nothing that I can find in the related section of the Administrative Code (434a-14.0) to cause me to modify my view. If anything, I find support for my holding. That section reads:
“Discipline of members.- — -a. The commissioner shall have power, in his discretion, on conviction by him, or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline, to punish the offending party by reprimand, for *319 feiting and withholding pay for a specified time, suspension, without pay during such suspension, or by dismissal from the force; but no more than thirty days’ salary shall be forfeited or deducted for any offense. All such forfeitures shall be paid forthwith into the police pension fund.
“ b. Members of the force, except as elsewhere provided herein, shall be fined, reprimanded, removed, suspended or dismissed from the force only on written charges made or preferred against them, after such charges have been examined, heard and investigated by the commissioner, one of his deputies or the assistant to the commissioner, upon such reasonable notice to the member or members charged, and in such manner or procedure, practice, examination and investigation as such commissioner may, by rules and regulations, from time to time prescribe.”
In People ex rel. Brennan v. Bingham (57 Misc. 677), in construing section 292 of the Greater New York Charter (which is almost identical with Code, § 434a-20.0), the court said (p. 678): “Certainly written charges must be preferred and actually pending before the commissioner is authorized to suspend a member of the police force without pay ’ ’.
In Lehmann v. City of New York (153 Misc. 834, 837, affd. 244 App Div. 712) the court said: “It is obvious, therefore, from the foregoing provisions [of the Greater New York Charter, §§ 292, 300, 302], that the police commissioner may suspend members of the department without pay after written charges have been preferred against them. * * “ If the officer is innocent of the charges, he loses no rights; if improperly convicted, his right to review the determination of the police commissioner is safeguarded.”
And the charges to which I refer as a sine qua non to the commissioner’s valid exercise of the power of suspension without pay are departmental charges — not charges, presentments, informations, indictments or accusations by or before any other official, body or tribunal. That, to me, is obvious from the simple logic basic to the provisions of the Administrative Code herein-before quoted; since those provisions call for a departmental trial, there must be departmental charges upon which that trial is to proceed. That is not to say that there may not be a departmental charge based upon the violation of a criminal law. As indicated in People ex rel. Cunningham v. Bingham (134 App. Div. 602) an indictment in a criminal court and a charge before the police commissioner are not to be regarded as the same offense, but, rather, that by one act or omission the plaintiff involved may have committed two offenses with the prescribed penalty for each — a breach of the criminal law on the one hand *320 and also a neglect of duty or conduct unbecoming a police officer or act violative of his official responsibility.
On the present submission it has not been established by the defendant that, with respect to the Brenner group, the suspension had anything to do with pending departmental charges. On the contrary, insofar as these plaintiffs are concerned, the exhibits clearly demonstrate that the suspension, when made, was with respect to the charges in the Court of Special Sessions — for there were then no other charges pending — and as to these the plaintiffs were acquitted. It is urged upon me by the defendant that, as appears from the court’s résumé of the facts in Cugell v. Monaghan (107 N. Y. S. 2d 117, 120) there may be suspension without pay notwithstanding the absence of departmental charges. I disagree with the implication thus relied upon. I hold that without such charges pending, there can be no valid payless suspension.
The Blessinger plaintiffs are on a different footing. While departmental charges there must be at or before the time of suspension, the law does not require, as I understand it, that the order of suspension or that such charges be in any precise or meticulous form. As has been pointed out in Cugell v. Monaghan (supra) a police officer Occupies a unique status in the maintenance of law and order in our community and an important position as an employee of the City of New York. The city is in many instances responsible for his conduct and behavior, at least while he is on duty. And, aside from that, the public interest might be seriously jeopardized if, notwithstanding that he himself is under arrest, the officer were allowed to continue to have police powers. I can conceive of circumstances that may arise which might require forthwith suspension. It is in part because of this that I do not go along with such a strict construction of the Administrative Code provisions as may result in a holding that the teletype orders as to the “ cause ” of the suspension (Exhibits A and F) are legally conclusive or that there may not be appropriate amendment of the departmental charges and specifications first made.
This view is supported by People ex rel. Langan v. Hayden (80 Hun 397) where it was held that technical accuracy is not requisite in these departmental disciplinary proceedings, and that it is sufficient if the charge fairly apprises the officer of the offense of which he is accused. And, in People ex rel. Flanagan v. Board of Police Comrs. (93 N. Y. 97, 103) the court said, “ As the board of commissioners do not constitute a court, its proceedings are not to be controlled and decided by the same degree of formality that would be required upon a charge of *321 a criminal offense before ordinary tribunals of justice. A general charge made, such as is here presented, would seem to be sufficient to answer the purpose intended and within the requirement of law under which the proceeding was conducted.” In Matter of Haslett v. Minetti (274 App. Div. 519, 521), the court held that “No error was committed in receiving the notice of ‘ particularization of charges ’ in the course of the trial, since petitioner had ample opportunity thereafter to meet any change in the charges occasioned by that notice.”
In Harriss v. Tams (258 N. Y. 229, 240) it was made clear that each extension of power to the court to amend pleadings in a judicial proceeding results in a greater procedural flexibility advantageous to the administration of justice, and that when the power shall be exercised rests in the sound discretion of the court. If the amendment introduces a completely new or entirely different cause of action, its allowance would be equivalent to the commencement of a new suit, but “ [i]f the amendment merely expanded or amplified what was alleged in support of the cause of action already asserted, it related back to the commencement of the action and was not affected by the intervening lapse of time.” (P. 242.) That principle should, at the very least, be equally applicable to the quasi-judicial disciplinary proceedings within the Police Department. Invoking this doctrine in the consideration of the instant state of facts, I agree with the defendant that the departmental charges on which the Blessinger plaintiffs were convicted by the commissioner are connected with and come within the scope of the charges originally made by him against the plaintiffs.
In sum, I hold that the plaintiffs in the Brenner group are entitled to judgment against the defendant and that the defendant is entitled to judgment against the plaintiffs in the Blessinger group.
Settle order accordingly.